ordinance is not made invalid by the fact that it provides for the enforcement of the payment of this penalty by imprisonment, instead of by civil action, even if the payment of the penalty assessed cannot be enforced by imprisonment.

For the reasons stated, the judgment of the District Court is affirmed.

---

## SMITH et al. v. GENERAL MOTORS CORPORATION.

(Circuit Court of Appeals, Sixth Circuit. May 14, 1923.)

No. 3766.

1. **Corporations ⬤76—Acceptance of option to subscribe for stock by making required cash payment held to constitute building contract of subscription.**

Where a corporation sent to a stockholder a subscription form reciting that he was entitled to subscribe for a stated number of shares of the increased capital stock at a named price on payment of 10 per cent. in cash, and he signed the subscription, but without filling in the number of shares, and sent it in with a payment of 10 per cent. on the full number, it constituted a definite contract of subscription for such number of shares.

2. **Corporations ⬤85—Assignment of contract of subscription for stock does not release subscriber from liability.**

A subscriber to the stock of a corporation, who made an initial payment and received a receipt which entitled him or his assigns to the stock on full payment of the subscription price, is personally liable therefor, from which liability he could not relieve himself by an assignment of the contract.

3. **Corporations ⬤78—Rights of parties on default on subscription contract.**

A subscription to original stock of a corporation at a definite par value and a subscription to an issue of increased no par value stock at a fixed price are governed by the same principles. In either case the contract with the corporation is not the ordinary one for purchase of property, where, on default in payment, the seller is bound to mitigate damages by a sale of the property at market value, but is a contract of subscription, and in case of default the subscriber may be required to take the stock and pay the full unpaid contract price.

4. **Corporatons ⬤78—Rights of subscriber to stock, pending full payment, may be fixed by agreement.**

While in the absence of special agreement a subscriber for stock has some rights of a stockholder from acceptance of his subscription, by express agreement the vesting of these rights may be postponed until full payment without changing the character of the contract as a subscription.

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Action at law by the General Motors Corporation against Eugene H. Smith and others, administrators. Judgment for plaintiff, and defendants bring error. Affirmed.

Edward S. Clark, of Bay City, Mich., for plaintiffs in error.

Thomas G. Long, of Detroit, Mich. (Rockwell T. Gust and Stevenson, Carpenter, Butzel & Backus, all of Detroit, Mich., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DENISON, Circuit Judge. In June, 1920, the General Motors Corporation increased its common capital stock and offered to existing common stockholders proportionally the right to subscribe to the new no par value stock at $20 per share. Under this situation Henry B. Smith, now deceased, was offered the right to subscribe for 14,401 shares of such new stock. He accepted this offer (as is claimed) and he paid, in accordance with its terms, $2 per share as a down payment. Before the balance came due he died, and his administrators refused to pay. This suit was brought against them in the court below, upon the trial there were no facts in dispute, each party requested an instructed verdict, and by the direction of the court, a verdict was rendered and judgment entered for the plaintiff corporation for the full amount claimed. The certificates of stock to which Smith would have been entitled upon full payment· were duly tendered to his administrators and deposited with the clerk of the court to keep the tender good.

The questions involved in this review are: (1) Was there a definite contract? (2) If so, was it a subscription or purchase contract, rather than an option to subscribe? (3) If the former, was the measure of damages the full unpaid subscription price, leaving the estate the owner of the stock, or was it the difference between the subscription price and the market price at the date when Smith, or his estate, defaulted in payment?

[1] Smith received a so-called subscription warrant saying that he was entitled to subscribe to 14,401 shares at $20 per share, on condition that at least $2 per share accompany the subscription. He signed the subscription form upon .the back of the warrant, but omitted to fill in the number of shares, leaving unfilled the blank provided for that purpose. Later he sent in the sum of $28,804, and seems to have sent also some fractional warrants· and a purported subscription for one share. He received and retained a part-paid subscription receipt, which recited that he had subscribed for 14,402 shares and paid the amount stated as a 10 per cent. payment thereon. Under these circumstances we do not think it open to his estate to say that the contract is indefinite, because the blank for the number of shares was not filled, in one of the documents.

[2] We think, too, that the obligation was in the nature of a definite contract rather than of an option. The option had been extended to him; when he accepted by his subscription, the option was closed and became a contract. It is true that the subscription warrant only evidenced a right to subscribe, and plainly contemplated that this right might be assigned and might be exercised by the assignee; but we find no right remaining in Smith, after his subscription, to transfer his interest and escape liability. The subscription receipt did not broadly provide for or contemplate assignment by him; it provided only that upon full payment of the other 90 per cent. by him or his assigns, the stock would be·issued. To agree to accept full performance from a promisor's assignee does not imply any agreement to release the promisor before performance.

[3] On the day when the payment of the remaining 90 per cent.

was due and that amount became unpaid, this stock had a market value of more than $18 per share. Hence, if the contract is to be treated as one for the purchase and sale of property, and the vendor was under the usual duty to mitigate damages by selling at the market price, there would have been no damage. This situation leads to the problem whether the contract was really one for the purchase of stock as of property, or was a contract to subscribe and take stock in the common aspect of such a contract.

It is at once conceded on the part of the estate that, in the case of the typical undertaking to subscribe for the original, formative stock, the subscriber must, when the time comes, take the stock and pay the full price. It is also conceded, on the other side, that there may be corporate stock and a sale of it by the corporation under such circumstances that, in case a contract purchaser defaults on his contract, he will be liable only for damages after they have been mitigated under the usual rules as to the purchase and sale of property, and that the name "subscription," or the use of the word "subscribe," in a particular contract, is not at all controlling; but its character in this respect must be determined by the facts.

Counsel for the Smith estate undertakes to escape the usual rule as to subscriptions by pointing out that this stock was not original, formative stock, having a par value fixed by statute or charter, which value must be paid at all events, but was part of an authorized increase of no par value stock, which was to be issued at a price fixed by the directors, and that from time to time the directors fixed varying prices on successive fractional issues of this same mass. We are unable to say that this is a material distinction. If the stock had once been issued and fully paid and then had been returned to the treasury and had been sold at prices discretionary with the directors, the question would be different; but none of this stock had ever been issued. It was part of a block of about 1,500,000 shares, which was offered to the existing stockholders at this definite fixed price to the extent of 20 per cent. of their existing holdings. A subscription to original stock at a definite par value and a subscription to an issue of increased no par value stock at a fixed and definite price seem to depend upon the same principles.

Nor can it be assumed that this stock had been subscribed for and in effect issued to the underwriters. An agreement had been made with the underwriters that they would take, upon stated terms, whatever stock was not subscribed and taken by existing stockholders; but it is evident that, if we treat this as a mere underwriting, it does not affect the question, and the record does not justify treating it as anything else.

[4]. It is also urged that one who is really a subscriber to an issue of capital stock is vested from that moment with all the rights of a subscriber; not only must he pay at the time fixed, but his share of the earnings in the interim belong to him; and it is said that to postpone all vesting of any rights as a stockholder until after he has paid his subscription in full indicates that he is only a contract purchaser of stock. This argument is based on the fact that by the terms of the

subscription warrant and receipt, dividends earned were not to accrue to the subscriber unless he had paid in full before their declaration; but instead he was to receive interest on his partial payment, and in case he did not pay the remainder he was to forfeit his first payment and get nothing. Doubtless, in the absence of special agreement, a subscriber for stock has at least some of the rights of a stockholder, from and after the acceptance of his subscription; but there seems to be no reason why by express agreement the vesting of these rights may not be postponed, without thereby destroying the character of the transaction as a subscription and transforming it into something else.

These considerations are the most forceful of those urged by counsel for the estate, and they do not convince us. The general rule as to the measure of a subscriber's liability is not questioned. Cook on Corporations, § 75; R. C. L. title Corporations, § 192. As to the supposed applicable distinctions, the matter seems to be essentially one of first impression. We do not get much help from the numerous cases cited by counsel on both sides. Every one is so fairly distinguishable, as to the particular points now made, that comment and review are inadvisable.

The judgment is affirmed.