MARY O. COATES and Others v. HATTIE M. COOPER
and Another.[1]

February 21, 1913.

Nos. 17,933—(218).

**Executed contract— action not barred by statute.**

1. A certain contract construed, and *held* not to be an executory contract for the sale of lands, but an executed contract, which transferred the title, though it provided for a conveyance in the future. An action by the grantee or his heirs against the grantor in such contract to determine adverse claims, and to compel a conveyance, is not barred by the six-year statute of limitations.

**Same— laches.**

2. Such an action is not directly or by analogy barred by the 15-year statute of limitations, it not appearing that defendants have for that period asserted any adverse, hostile claim; nor is it barred by laches, it not appearing that defendant was injured by the delay.

**Defense without merit.**

3. A defense to such action, based on the claim that the contract was inequitable and the action speculative, *held* to be without merit.

Action in the district court for Cass county to determine that defendant Hattie M. Cooper was the holder of the legal title to certain lands in trust for plaintiffs and to require the execution of a conveyance of her interest in them. The substance of the complaint and the defenses set up in the answer will be found on pages 15 and 16, infra. The case was tried before McClenahan, J., who made findings and ordered judgment in favor of plaintiffs. Defendant's motion to amend the findings was denied. From the judgment entered pursuant to the order for judgment, defendants. appealed. Affirmed.

*James E. Jenks* and *O'Brien, Young & Stone,* for appellants.
*Thwing & Rossman* and *R. B. Brower,* for respondent.

[1] Reported in 140 N. W. 120.

BUNN, J.

Prior to March 6, 1886, Josiah E. Hayward had been for many years engaged in logging and lumber operations, and had accumulated property of considerable value, including a logging outfit and timber lands in Cass county. His son, William H. Hayward, then 27 years old, had been employed by his father in his logging and hotel business, but without any stated salary, and he and his wife lived as members of the father's family. On March 6, 1886, the father and son entered into an agreement of copartnership. The father contributed his timber lands, contracts, and outfit, and the son nothing, save his agreement to devote his time and energies to the business. It was provided that the partnership should, except in the event of the death of one of the parties, remain in force until the pine on the lands contributed by the father should be cut and disposed of; and that in case of the death of the son before this the lands should revert to the father, and the remaining property be divided between the father and the son's estate.

During the time the partnership continued, the lands involved in this case were purchased with partnership funds, taken some in the name of William H. Hayward and others in the names of Josiah E. and William H. Hayward. On January 10, 1890, while the partnership still continued and before any accounting was had, the son died intestate, leaving his widow his sole heir. On January 24, 1890, the father and the widow entered into the contract which forms the basis of this suit. This contract was as follows:

"Agreement.

"Whereas, William H. Hayward departed this life, intestate, on the 10th day of January, A. D. 1890, leaving him surviving no children, and leaving him surviving as his sole and only heir at law his wife, Hattie M. Hayward; and whereas, at the time of his decease and for some years theretofore, said William H. Hayward and his father, Josiah E. Hayward, were copartners in the lumbering business under the firm name and style of W. H. Hayward & Co., pursuant to a written contract of copartnership bearing date the 6th day of March, A. D. 1886; and whereas, the larger part of the estate of said William H. Hayward consists of his interest in

the said copartnership, and the said Josiah E. Hayward and Hattie M. Hayward are the only persons now interested in the said copartnership or in the said estate:

"Now, therefore, and for the purpose of making a mutually satisfactory settlement of the said copartnership business and of the said estate, it is hereby mutually agreed by and between said Josiah E. Hayward, of the first part, and said Hattie M. Hayward, of the second part, as follows:

"First. Said Josiah E. Hayward hereby assumes and agrees to pay and to hold said Hattie M. Hayward and the estate of William H. Hayward harmless from all the following debts and claims, to wit: All the debts, claims and demands of every kind and nature of or against the said copartnership of W. H. Hayward & Co., also the claim against said William H. Hayward in favor of Messrs. Kelly & Hansen, and also the claim against him in favor of A. F. Robertson, and also all debts, claims and demands arising from, out of, or on account of, the sickness, death, burial and funeral of said William H. Hayward, or in any way relating thereto.

"Second. Said Josiah E. Hayward hereby acknowledges full payment and satisfaction of and hereby satisfies all debts, claims and demands of every kind and nature he has or may have against the estate of said William H. Hayward or against said Hattie M. Hayward.

"Third. Said Josiah E. Hayward agrees to pay said Hattie M. Hayward the sum of eight thousand dollars and to evidence the same by his two promissory notes bearing even date herewith and each for the sum of four thousand dollars, with interest thereon at the rate of seven per cent. per annum, and payable, respectively, in one and two years from date.

"Fourth. Said Hattie M. Hayward agrees and hereby does sell, transfer and set over unto the said Josiah E. Hayward all her interest as the widow of said William H. Hayward in and to all the personal property of every kind and nature of said copartnership of W. H. Hayward & Co., and in and to all the business of said copartnership and everything pertaining thereto.

"Fifth. Said Hattie M. Hayward agrees to convey to said Josiah

E. Hayward all her interest as the widow and heir of said William H. Hayward in and to all the lands in the county of Cass and state of Minnesota of which the title is in the names of said Josiah E. Hayward and William H. Hayward or in the name of said William H. Hayward, except the northwest quarter of the southwest quarter and lot three (3) of section twenty-two (22) in township one hundred forty (140) north of range twenty-seven (27) west.

"Sixth. It is hereby mutually agreed that all the moneys that may be received or collected for or on account of any and all life insurance on the life of William H. Hayward is and shall be and become the sole and absolute property of said Hattie M. Hayward.

"Seventh. Said Hattie M. Hayward hereby acknowledges full payment and satisfaction of any and all claims she may have as the widow and heir of said William H. Hayward against the said copartnership of W. H. Hayward & Co., or against said Josiah E. Hayward.

"Eighth. It is hereby mutually agreed that the northwest quarter of the southwest quarter and lot three of section twenty-two, hereinbefore mentioned, and the interest at the time of his decease of said William H. Hayward in and to all lands in Itasca county, Minnesota, and in and to all property of every kind and nature not herein otherwise disposed of, is and shall be and become the sole and absolute property of said Hattie M. Hayward, and that the pony known as her pony is and shall remain her property.

"Ninth. It is hereby mutually agreed that each and both of the parties hereto shall properly execute all necessary transfers and conveyances proper to vest title to all the property herein referred to, in accordance with the agreement herein made.

"Tenth. Said Josiah E. Hayward hereby agrees to defray all the expenses of probate or other proceedings that he may desire to perfect title to the property to be conveyed to him hereunder.

"Eleventh. Said Josiah E. Hayward hereby agrees that no claim against said Hattie M. Hayward shall at any time arise or exist on account of anything he may hereafter furnish her as a member of the family.

"Twelfth. It is mutually agreed that all the terms hereof shall

be binding upon the heirs, executors, administrators and assigns of said parties and each and both of them.

"In witness whereof, the parties hereto have executed this agreement in duplicate this 24th day of January, A. D. 1890.

"Josiah E. Hayward.    [Seal.]
"Hattie M. Hayward.    [Seal.]"

This contract was recorded on January 25, 1890. Josiah E. Hayward performed and complied with each and every part of the agreement to be by him performed and complied with. Hattie M. Hayward, now Hattie M. Cooper, one of the defendants, continued to be a member of the father's family until after her marriage to defendant Charles A. Cooper. She never conveyed to Josiah E. Hayward any of the land; nor was any conveyance ever requested. The pine was cut by the father, and the lands were evidently regarded of very little value thereafter, and were sold for taxes. Hattie M. Cooper made no objection to the cutting or removal of the timber; and, in fact, neither she nor her husband made claim of any right to or title in the lands until plaintiffs, who are the heirs of Josiah E. Hayward, in 1910, requested a quitclaim deed.

Josiah E. Hayward died in 1895, and by agreement among his heirs the lands involved here were deeded to his four daughters, plaintiffs herein, who deeded a part interest to plaintiff Gilbert. Plaintiffs paid no taxes on the lands, except that they paid some of the taxes in 1905. Their explanation for the failure to pay taxes was that the lands were excessively taxed; there being no change in the valuations after the removal of the timber. Defendants never paid any taxes on the lands. In November, 1909, the Hayward heirs, plaintiffs in this case, entered into a contract with the Reishus-Remer Land Company, by the terms of which the company undertook to clear the land from taxes, tax liens, and titles, in considerations of a quitclaim deed to an undivided half interest. Mrs. Cooper refusing, on demand, to give a deed, this action was commenced in the names of the heirs of Josiah E. Hayward, though at the expense of the land company.

The complaint alleges that the making of the contract herein-

before set out, its full performance by Josiah E. Hayward and his representatives and heirs, and the refusal of defendants to convey the lands. It alleges that the parties to the contract, their heirs, successors, and assigns, ever since it was entered into and until shortly before the commencement of the action, "practically construed, interpreted, regarded, and by mutual consent acted upon said agreement as fully accomplishing the conveyance and transfer to said Josiah E. Hayward of all the right, title, and interest of said Hattie M. Hayward in and to all said lands, and as completely vesting in said Josiah E. Hayward and his heirs and assigns the legal and equitable title to said lands, and that ever since the execution and delivery of said agreement said Josiah E. Hayward and his heirs and assigns have been, and these plaintiffs now are, the owners of the complete legal and equitable title to all said lands." The complaint also alleges that the lands are vacant and unoccupied.

The relief demanded is a judgment declaring that defendant Hattie M. Cooper is the holder of the legal title to her interest in said lands as widow and heir of William H. Hayward, in trust for plaintiffs, and requiring defendants to execute and deliver to plaintiffs a deed of all the interest in the lands that passed to Hattie M. Cooper as the widow of William H., and decreeing that on defendant's failure to execute such deed within 10 days the judgment should have the effect of a conveyance, and adjudging that Josiah E. Hayward, his heirs and assigns, have been since the date of the contract, and now are, the owners of all said lands, free and clear of any and all claims of defendants.

The answer pleaded several defenses: (1) That Hattie M. Hayward was of unsound mind at the time the contract was entered into; (2) fraud in inducing her to enter into the contract; (3) the six-year statute of limitations; (4) abandonment of the lands by Josiah E. Hayward and his heirs, and the lapse of more than 15 years since the lands were seised or possessed by plaintiffs or their ancestor or grantor.

The case was tried on these issues. It is here conceded that the defenses of unsound mind and fraud were not made out. The trial court found, in addition to the facts above recited, that it was

the intention of the parties to the contract of January 24, 1890, to thereby transfer from Hattie M. Hayward to Josiah E. Hayward, without the necessity of further act or conveyance by either party, "the full legal and equitable title" in and to the lands involved in this case; that the parties to the contract and their heirs, successors and assigns, had so practically construed the contract, and that Josiah E. Hayward, his heirs and assigns, have been ever since the execution of the contract the owners of the complete legal and equitable title to the lands; that defendants and each of them have, and have had since the execution of the contract, no estate or interest in or lien upon the lands or any part thereof. As conclusions of law, it was determined that plaintiffs were entitled to judgment that they are the owners in fee simple of the legal and equitable title to the lands, adjudging the adverse claims of defendants to be null and void, and directing defendants to execute and deliver to plaintiffs, within 10 days after the entry of judgment, a deed of the lands, and upon their failure to do so that the judgment have the effect of such a deed. A motion to amend the findings and conclusions was denied, and judgment entered. Defendants appeal to this court from this judgment.

1. The chief question on this appeal is whether this action is barred by the six-year statute of limitations. The decision of this question depends wholly on whether this is an action to enforce specific performance of a purely executory contract for the sale of land. If it is, then, under Lewis v. Prendergast, 39 Minn. 301, 39 N. W. 802, it is barred by the statute. If the action is not to enforce specific performance, if the contract of January 24, 1890, is not executory, the bar of the statute does not apply.

We have given the substance of the allegations of the complaint and of the findings, as from these must be determined the nature of the action; and we have set out the contract in full, because it must be considered as a whole in determining whether it is an executory or an executed contract. It is apparent, we think, that the action is rather one to determine adverse claims than one to specifically enforce the contract.

The complaint alleges clearly that plaintiffs are the legal and

121 M.—2.

equitable owners of the lands, and demands judgment to that effect, and declaring void defendants' claims. The court expressly found that plaintiffs were and had been ever since the contract was made, the legal and equitable owners of the land, and that defendants' claims were void. That the relief of a deed from defendants was also demanded, and that the findings and judgment granted this relief, does not change the essential character of the action. This depends more upon the nature of the contract which is the foundation of the action than upon the allegations of the pleadings or the relief demanded. If the contract was purely executory, the only relief plaintiffs would be entitled to would be specific performance. If it was executed, there would be no occasion for that relief; an action to determine adverse claims being the proper remedy. The complaint certainly does not show that plaintiffs, by asking the relief they did, treated the contract as executory. We are therefore brought squarely to the question whether the contract was purely executory, or whether it was executed, in the sense that the title to the land vested in Josiah E. Hayward when the contract was signed and delivered. This was the essence of the trial court's decision, and the inquiry naturally is whether the evidence sustains the facts found, and whether the findings of fact sustain the conclusions of law and judgment.

The question is one of the intention of the parties, as gathered from the contract as a whole construed in the light of the surrounding circumstances. This light is strong in this case. Hattie M. Hayward was not the owner of the lands; they were purchased with partnership moneys, and were partnership property. They were valuable only for the timber that remained on them, and were wanted by Josiah E. Hayward for immediate use in cutting this timber. He became the sole owner of the logging outfit and all other of the firm property, and evidently expected to and did continue the business carried on by the firm before his son's death. Under the terms of the partnership agreement, the death of William H. Hayward dissolved the partnership, and "the property remaining, whether as capital stock or profits in said business," was to be divided between his estate and the surviving partner. This agree-

ment contains no provision on the subject of real estate acquired by the firm, and it was apparently not contemplated that the partnership would acquire real estate, as it was to terminate when the marketable timber on the lands contributed by the father had been cut and disposed of. But we may concede that the son's widow had an undivided interest in these lands, subject, however, to the debts of the partnership and the settlement of its affairs. What the value of this interest was would be quite problematical. Under the circumstances, it was entirely natural that an agreement should be made that would for once and all settle the partnership business and estate and the rights of the surviving partner, and the widow of the deceased partner, to all the partnership property.

The contract itself bears persuasive evidence that it was intended to settle everything definitely and finally. It recites that it is made for the purpose of "making a mutually satisfactory settlement of the said copartnership business and of the said estate." Josiah E. Hayward assumes and agrees to pay, and to hold Hattie M. harmless from, all claims against the copartnership and certain claims against William H. He acknowledges payment of all claims he has against the estate of his son or against his widow. He agrees to pay to the latter $8,000, and evidence the same by two promissory notes bearing even date with the contract, payable in one and two years, with interest at 7 per cent. It is agreed that all moneys collected on account of life insurance on the life of William H. Hayward shall be the absolute property of Hattie M. though in fact the premiums were paid out of partnership funds. Hattie M. Hayward acknowledged full payment and satisfaction of all claims she might have as widow and heir of William H. Hayward against the copartnership, or against Josiah E. It was agreed that a 40-acre tract and a lot comprising part of the partnership lands, and "the interest at the time of his decease of said William H. Hayward in and to all lands in Itsaca county, Minnesota, and *in and to all property of every kind and nature not herein otherwise disposed of, is and shall be and become* the sole and absolute property of said Hattie M. Hayward."

This reference to "all property of every kind and nature not here-

in otherwise disposed of" is quite significant that the parties regarded the contract as finally "disposing of" all the property of the deceased, both real and personal.

On her part, Hattie M. Hayward transfers to Josiah E. all her interest in the personal property of the partnership, and in "the business of said copartnership, and everything pertaining thereto." She also "agrees to convey" all her interest, as the widow of William H. Hayward, in the Cass county lands. Leaving out of consideration for the moment this language of paragraph 5 of the contract, we think it reasonably clear that the contract as a whole evidences an intention to at once finally and definitely settle all matters relating to the partnership and the partnership property. It is not sufficient to make the contract executory that the notes to evidence the promise to pay $8,000 were to be paid at a future date; they were to bear interest. Nor is it important that the payment of the debts of the partnership and of William H. Hayward was to be made in the future; these debts were assumed by Josiah Hayward. We find nothing in the contract, unless it be in the language of paragraph 5, to indicate that it was not an executed contract.

The language "agrees to convey" in the fifth paragraph of the contract, if taken alone, does not show a present transfer of title, and is apt language to indicate an executory contract. But, as we have said, the contract must be construed as a whole and in the light of all the surrounding circumstances. It is a question of the intention of the parties. Ordinarily, it is true, a contract is deemed executory when something remains to be done or agreed upon in the future, or when it depends upon some contingency or future act of one of the parties. But when it appears that the intention of the parties, gathered from the language of the entire contract construed in the light of the surrounding circumstances, was that nothing further was to be done under the contract to render it complete and binding, the contract is deemed an executed one, and not executory. And this intention may be found, notwithstanding a conveyance was to be made in the future. 39 Cyc. 1299; 13 Cyc. 602, note 50; Williams v. Paine, 169 U. S. 55, 18 Sup. Ct. 279, 42 L. ed. 658; Ford v. Ford, 24 S. D. 644, 124 N. W. 1108.

It is an important consideration that there is no language in the contract which directly or by implication makes the right to a conveyance dependent upon the performance of any of the conditions imposed upon the vendee. In executory contracts for the sale of land the covenants to pay or secure the purchase price, and to convey, are usually, if not always, dependent covenants, made so by the language of the contract, expressly or by necessary implication. Here the language used practically forces the conclusion that the right to a conveyance was absolute, and not conditional upon the payment of the debts or of the notes.

Counsel for defendants ask whether Josiah E. Hayward was entitled to a conveyance of the lands before he had actually performed the conditions he agreed to perform in the future. The question is pertinent, and the answer decisive of the question whether the contract was executory or executed. Our opinion is that he was entitled to a deed on the execution of the contract, if he had demanded it. In case he failed to pay the notes, or the debts of the partnership or of William H. Hayward, the law would furnish a remedy for such breach of his contract, and apparently Hattie M. Hayward was satisfied to rely on the honesty of her husband's father, and upon his ability to carry out his promises, without making her agreement to convey dependent upon performance by him. It is also significant that no time is named for the conveyance.

The construction placed upon the contract by the parties during the years after it was executed, as shown by their conduct and actions, is a consideration entitled to weight. It appears quite clearly, we think, that the lands were treated as belonging to Josiah E. Hayward after the contract was made. Our conclusion is that the decision of the trial court that it was the intention of the parties to the contract that the title to the lands should immediately vest in Josiah E. Hayward is sustained by the language of the contract, construed as a whole in the light of the surrounding circumstances and with the help of the practical construction of the parties.

It follows that the heirs of Josiah E. Hayward were the owners of the lands, and that Hattie M. Cooper held the legal title in trust for them, and that this action was properly one to determine adverse

claims, and incidentally to compel a conveyance by the trustee. It is not necessary to describe the character of the title which plaintiff's have as "legal" or "equitable," or to say what kind of a trustee defendant became. It suffices to say that the contract operated to transfer a title to Josiah E. Hayward, to make him the owner of the lands, and to say that Hattie M. Hayward, if she held any title, held the record title in trust for Josiah E. Hayward and his heirs. The action was not barred by R. L. § 4076, the six-year statute of limitations.

2. It is claimed that if this was an executed contract, as we have held it to be, this action is barred, because more than 15 years have elapsed since the cause of action accrued. We do not sustain this contention. There was no assertion of the adverse claims of defendants until 1910. Neither directly nor by analogy does the statute (R. L. 1905, § 4073) bar an action to determine adverse claims to unoccupied property, solely because the holder of the title does not commence his action until more than 15 years after he might have done so. Morris v. McClary, 43 Minn. 346, 46 N. W. 238. There has been no period of 15 years during which defendants have asserted an adverse, hostile claim of title to the lands.

The claim that the action is barred by laches is not tenable. Defendants have in no way been injuriously affected by the delay, and hence cannot invoke the equitable doctrine of laches. State v. Murphy, 81 Minn. 254, 83 N. W. 991. Whatever support the case of State v. Norton, 59 Minn. 424, 61 N. W. 458, gives to defendant's contention that plaintiffs were obliged to bring their action within 15 years after they or their ancestor acquired title is removed by the decision in State v. Murphy.

3. Defendants urge that the contract was inequitable; that the action is speculative; and that relief should be refused for these reasons. Even if this were an action for specific performance, we would not be impressed with the truth of these claims, and they are clearly without merit as a defense to this action.

Judgment affirmed.