MEYER D. STERN v. CHARLES A. MAYER.[1]

March 12, 1926.

No. 25,048.

**Contract to take stock when issued and to pay price specified an executory contract of sale and not a subscription.**

1. A contract set forth in the opinion is construed as an executory contract for the sale and purchase of corporate stock and not a subscription for capital stock.

**Bankruptcy equivalent to repudiation by bankrupt, subject to option of trustee to perform.**

2. Ordinarily bankruptcy is a complete disablement of the bankrupt from performance of his contracts and the equivalent of repudiation, subject only to the right of the trustee in some cases to rehabilitate the contracts by performance.

**Implied in every contract party will not allow himself to become unable to perform.**

3. It is implied in every contract that a party thereto will not permit himself through bankruptcy to become disabled from performance.

**Trustee of bankrupt corporation cannot perform its executory contract for sale of stock.**

4. Where a corporation makes an executory contract for the sale of shares of its capital stock and then becomes a bankrupt, the contract is of such character that the trustee cannot in law perform.

[1]Reported in 207 N. W. 737.

Bankruptcy, 7 C. J. p. 226 n. 58.
Contracts, 13 C. J. pp. 525 n. 41; 542 n. 30; 651 n. 55.
Corporations, 14 C. J. pp. 478 n. 44; 481 n. 87; 507 n. 32, 33; 508 n. 38, 39, 40, 41; 511 n. 68; 535 n. 95; 550 n. 51, 53; 551 n. 58; 658 n. 61, 64, 65; 684 n. 17; 685 n. 20, 21; 704 n. 71; 705 n. 75, 81.

Plaintiff appealed from an order of the district court for Mille Lacs county, Roeser, J., sustaining a demurrer to the amended complaint. Affirmed.

*Allen & Fletcher*, for appellant.

*E. L. McMillan*, for respondent.

WILSON, C. J.

Appeal from an order sustaining a demurrer to a complaint in an action to recover upon an instrument in the following form:

"Application for Stock

"I hereby subscribe for 5 shares of the Common Capital Stock of the U. S. I. Realty Company of Minneapolis, Minnesota, and agree to take the same when issued and to pay for the same $800.00.

"Paid on above $72.00 bond.

Name Chas. A. Mayer
City of Belgrade
County of Stearns
State Minn.

(Amount stated as paid should agree with amount of receipt.)

Occupation Priest.
Date 9/10/1917
Belgrade, Oct. 10, 1917.

"Reference being made to the subscription of the undersigned, of even date, for 5 shares of stock in the U. S. I. Realty Company, I hereby promise to pay to said company at its office in Minneapolis, Minnesota, on account of the subscription price of said stock $800.00 in yearly payments of $72.00 each, or more at my option, each month hereafter, beginning with the month of July, 1918. The company accepts the subscription and agrees to issue and deliver the stock

when the amount paid with interest thereon at 6% per annum from the date of each payment shall equal the subscription price of the stock.

"If no payment shall be made for any month, interest shall not be allowed for that month; if no payment shall be made for twelve consecutive months, then it is agreed. that the subscription and acceptance shall, at the option of the company, become of no effect, and that the amount paid shall be retained as liquidated damages for my non-performance.

"Sign here Chas. A. Mayer,

"U. S. I. Realty Company,

"By A. J. Johnson, ·

"Treas.

(Seal)

"H. H. Ayers, Salesman."


Subsequent to the execution of the above agreement the U. S. I. Realty Company was adjudged a bankrupt and the plaintiff as trustee prosecutes this action to recover an alleged balance unpaid on the agreement. Much might be said as to the indefinite terms of payment as specified in the contract in this particular case, but we will assume that it contains some error in this respect. We will decide the case on other grounds.

The important question is whether this writing is to be construed as a subscription to capital stock or a contract for the sale and purchase of shares of such stock. Whether it is on one or two papers is not important. We must therefore find the intention of the parties. Perhaps the most persuasive argument in favor of it being a subscription for stock is the fact that it contains the language: "I hereby subscribe  *  *  *  the subscription of the undersigned." "The company accepts the subscription." But this does not necessarily show that the transaction was not a purchase. Lincoln Shoe Mnfg. Co. v. Sheldon, 44 Neb. 279, 62 N. W. 480; 2 Fletcher, Cyc. Corp. § 520, p. 1124. Ordinarily subscriptions to capital stock of a corporation are mutual agreements to take shares made upon the

formation of a corporation. Yet the term is often applied to take stock, entered into with the corporation itself after its formation. 14 C. J. 507, 508. If the instrument is a mere subscription for stock like that involved in Marson v. Deither, 49 Minn. 423, 52 N. W. 38, the subscriber has the status of a stockholder. In an action upon a stock subscription, which does not by its terms require the execution and delivery of the certificate before or concurrently with payment, an allegation of nondelivery of stock is no defense. In such cases it is not necessary to allege a tender thereof in the complaint. Columbia Elec. Co. v. Dixon, 46 Minn. 463, 49 N. W. 244; Marson v. Deither, supra; Walter A. Wood Harvester Co. v. Robbins, 56 Minn. 48, 57 N. W. 317; Walter A. Wood Harvester Co. v. Jefferson, 57 Minn. 456, 59 N. W. 532; Galbraith v. McDonald, 123 Minn. 208, 143 N. W. 353, L. R. A. 1915A, 464, Ann. Cas. 1915A, 420. Since a stock certificate is merely evidence of ownership of the stock, it is unessential to make one a stockholder.

The general rule is that the execution and delivery of the certificate are not conditions precedent to the liability of a subscriber to stock on his subscription or to calls or an action thereon by the corporation, unless the contract of subscription expressly requires a tender of certificate as a condition precedent to liability thereon. In this case the corporation has agreed to issue and deliver the stock when its purchase price is paid. It may, notwithstanding this reservation, be a subscription. The presence of such reservation is a circumstance indicative of a sale rather than a subscription. Whichever it may be, the complaint must plead that it is able and willing to perform. In other words, where the contract in a stock subscription provides for delivery of stock when paid for, the acts must be regarded as contemporaneous. In such case the corporation's inability to perform should disable it from enforcement against the subscriber, although he may, by virtue of the terms of his contract, be a stockholder. Hence in an action for the whole amount subscribed or to enforce payment of the final instalment, plaintiff must allege his willingness and ability to perform. Walter A. Wood Harvester Co. v. Jefferson, supra. Plaintiff has done this.

The distinction between the sale of corporate stock and subscription thereto is that a subscriber has certain attributes in the way of rights, privileges and liabilities, ordinarily including title, that do not attach to a purchaser. Plaintiff asks to have this instrument construed as a subscription with the attributes mentioned withheld from the defendant or suspended until he makes payment. The absence of such rights and liabilities is the very thing that prevents holding the instrument to be a subscription. If these attributes are to attach only on complete performance by defendant, the transaction is ordinarily a sale. The subscriber, by the terms of his contract, becomes the owner of the stock before the certificate is issued or delivered. Contracts for sale and purchase ordinarily confer no title or interest in the subject matter therein. In case of a sale of shares by the corporation, the purchaser is not a stockholder with respect to the corporation until the agreement is executed by transferring the shares on the books of the corporation. Whether the instrument indicates an intention to become a stockholder prior to the party thereto fully performing his contract, is the important element. The effect of an unconditional subscription of stock is to give him an interest in the corporation, i. e., it makes him a stockholder and there is an implied promise to issue to him the proper certificate as evidence of his interest whenever he complies with the terms of his contract. Walter A. Wood Harvester Co. v. Robbins, 56 Minn. 48, 51, 57 N. W. 317; 2 Fletcher, Cyc. Corp. § 520, p. 1120; 14 C. J. 508, § 754.

The written contract must be construed as a whole and in the light of all the circumstances. The paper in question has certain indicia that the parties intended it to be a sale. It is an indefinite and conditional agreement that may be terminated by contingency. It is not labeled a "Subscription for Stock" but an "Application for Stock," which is somewhat analogous to a request that stock be sold the applicant. The title indicates that the parties meant "apply" and "application" when they used the words "subscribe" and "subscriber." Naming the instrument "Application for Stock" indicates that the corporation regarded the execution and delivery of

the instrument as an application for the purchase of stock and an agreement to pay for it when issued. The corporation accepted the application and agreed to issue and deliver the stock when full payment was made. It does not have the usual characteristics of a subscription contract hereinbefore mentioned. There is nothing to indicate that the corporation ever intended to consider defendant a stockholder before receiving payment. The absence of the requirement to pay as called for by the board of directors, which is quite a usual incident to a subscription contract, is significant. The method of payment is unusual. Ordinarily stock is not given to subscribers on long-time payment terms. A stock subscription contemplates added money as capital stock. In this case the acquisition to capital was so remote that it rather indicated some other purpose. Reservation of the option to forfeit is a typical provision of a sales contract. The language does not purport to give defendant anything except the prospective right to become a stockholder at a future time, contingent upon his making all payments. Failure to make such payments may well be said to avoid defendant's inchoate right to become a stockholder. The terms of the contract are that made payments, and not deferred, bear interest. It would seem that, if the parties intended an executed contract vesting the defendant with the attributes of a stockholder, the deferred and not the made payments would draw interest. There is really nothing in the contract which would lead the defendant to think that he had acquired the status of a stockholder. We have difficulty in acceding to the suggestion that either of the parties had any thought of the defendant having any definite results from this agreement until he first made his payments. The wording of the contract that the corporation "agrees to issue and deliver the stock when the amount paid with interest" shall equal the price of the stock, is explicit. The language of the instrument has much to do with futurity and leads to the inevitable conclusion that the contract is executory. Coates v. Cooper, 121 Minn. 11, 140 N. W. 120; Karbach v. Grant, 131 Minn. 269, 154 N. W. 1071. It would be executed upon the payment being made and the stock issued.

We are of the opinion that this agreement was not a subscription, but an executory contract for the sale and purchase of stock.

Is the plaintiff in a position to carry out this contract? It alleges that it is ready and willing to deliver a certificate. But the complaint discloses that the corporation is bankrupt. The bankrupt proceeding is not equivalent to the ordinary dissolution proceeding. It is, however, something for which the defendant is not responsible. It is directly attributable to something done or omitted by the bankrupt. There may be cases where a bankrupt may successfully keep a contract alive and others in which a creditor may be able to ignore the breach arising from bankruptcy and keep the contract alive against the bankrupt. Ordinarily bankruptcy is a complete disablement of the bankrupt from performance of his contracts and the equivalent of a repudiation, subject only to the right of the trustee in some cases to rehabilitate the contract by performance.

In re Pettingill & Co. (D. C.) 137 F. 143, the court said: "Bankruptcy itself may be treated as a breach of the bankrupt's contracts, analogous to that complete repudiation of the contract before the time of performance which was shown in Hochster v. Delatour, 2 E. & B. 678, and in Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. ed. 953, or to a complete disenablement of performance of the contract, as in Frost v. Knight, 7 Exch. 111." This principle is supported by authority. In re Neff, 84 C. C. C. A. 561, 157 F. 57, 28 L. R. A. (N. S.) 349; In re Inman & Co. (D. C.) 171 F. 185; Pa. Steel Co. v. N. Y. City Ry. Co. 117 C. C. A. 503, 198 F. 721, 743; In re Frank E. Scott Transfer Co. 162 C. C. A. 452, 216 F. 308; Central Trust Co. v. Chicago Aud. Assn. 240 U. S. 581, 36 Sup. Ct. 412, 60 L. ed. 811, L. R. A. 1917B, 580; Merchants Nat. Bank v. Continental B. & L. Assn. 147 C. C. A. 22, 232 F. 828; In re Portage Rubber Co. (C. C. A.) 296 F. 289; In re Bissinger Co. (D. C.) 5 F. (2d) 106. The Pa. Steel case and the Chicago Auditorium case cited show that in the Federal district courts there is some diversity of opinion.

The corporation cannot perform because of its bankruptcy. The title to all its assets is in the trustee. Usually a contract of the

bankrupt passes to the trustee who has the option to perform. But the character of this contract and the effect of the bankruptcy result in a complete destruction of the subject matter which makes performance impossible. Bankruptcy of the corporation leaves nothing but the shell. The trustee cannot give any beneficial interest to defendant if he pays the balance on the contract. We think that the law, under such contract, contemplates that the seller should. The inability to do this destroys the optional right of performance by the trustee. The law does not expressly recognize any person or persons who have the capacity to issue a valid certificate of stock under such conditions. Appellant says there is no reason why a bankrupt corporation cannot issue stock. To so hold would disregard the element of good faith in contracts. The fact that the law does not provide for such is the best evidence that it cannot recognize such a futile transaction as substantial performance of a contract. Aside from the fact that no one is authorized to issue it, it seems to us that the stock is for all legal purposes lifeless. For all practical purposes the bankruptcy of a corporation is equivalent to its death. In fact, it must be held, as an implied term of every contract, that a party thereto will not permit himself, through bankruptcy, to become disabled from performance. It violates his agreement. It is a renunciation by conduct. Before such stock could be issued, other than as an idle ceremony, it would be necessary for the corporation to be refinanced and those who so financed it would not expect stock to be issued and the trustee to take the money. But we are unable to appreciate any probability of a bankrupt corporation being refinanced. It is more likely to be succeeded by a new corporation which will not suffer from the sting of bankruptcy. We may well take judicial notice of the fact that bankrupt corporations are scarcely ever rehabilitated. A composition with creditors is not involved.

Affirmed.