The **LIBERTY NATIONAL BANK AND TRUST COMPANY OF OKLAHOMA CITY, Oklahoma, Trustee under the Last Will and Testament of Clyde J. Albright, Deceased, Appellee,**

v.

**Ray B. ALBRIGHT, Appellant.**

**No. 47143.**

Court of Appeals of Oklahoma, Division No. 2.

April 22, 1975.

Rehearing Denied June 13, 1975.

Certiorari Denied July 22, 1975.

Released for Publication by Order of Court of Appeals July 24, 1975.

Roger H. Swan, Smith, Leaming & Swan, Oklahoma City, for appellee.

James D. Fellers and Michael L. Smith, Fellers, Snider, Baggett, Blankenship & Bailey, Oklahoma City, for appellant.

BRIGHTMIRE, Judge.

Here a bank trustee seeks judicial construction of a testamentary trust set up to effect posthumous control of a nearly three-quarters of a million dollar estate accumulated by the late Clyde J. Albright, founder of Albright Steel and Wire Company, and until his death August 24, 1971, its principal stockholder and chief executive officer. The protagonist in the controversy is Ray B. Albright—brother of testator and long-time employee of the steel company—whose "Answer and Counterclaim" sets up defenses and asks for equitable enforcement of the claimed beneficial rights under the trust. The trust filed both a demurrer to the answer and counterclaim and a motion for judgment on the pleadings. From an order finding both "should be sustained . . . and . . . Defendant's counterclaim . . . dismissed," defendant Ray B. Albright appeals.[1]

The pivotal issue requiring an answer, we think, is embodied in defendant's first proposition—that his counterclaim does state a cause of action. If it does then the trial court erred reversibly.

To appreciate the difficult nature of the problem it is necessary to review basic background facts and then the pleadings since the judgment below is founded on the pleadings alone.

---

1. We will proceed on the premise such "order" is a sufficient final one though it enters no judgment as such but merely says "IT IS SO ORDERED" after reciting what should be done. We presume by the phrase "IT IS SO ORDERED" the trial judge meant he (1) sustained a demurrer to both defendant's answer and counterclaim; (2) dismissed the latter; (3) granted plaintiff judgment on its petition for the particular relief it asked for, namely, "for construction of said testamentary Trust as to the questions hereinabove set forth, and that this Court assume and retain jurisdiction for all purposes involving said Trust, and for such other and equitable relief as may be proper."

Thus the only judgment entered is one by inference—that the trustee has unrestricted discretion to discharge defendant as manager of the steel company, sell substantially all of the company's assets, and that the court has "continuing jurisdiction of the Trust for all purposes."

Plaintiff, The Liberty National Bank and Trust Company of Oklahoma City, was nominated trustee of a marital deduction trust and a residuary trust set up in Clyde Albright's last will. The trust provisions are quite lengthy and detailed and designed no doubt to minimize estate taxation as well as provide extended benefits for his wife, children, grandchildren, nieces and nephews and . . . perhaps for his brother—the defendant in this lawsuit. We say perhaps because whether the brother is a beneficiary or not gets us into one of the core questions of the dispute.

Certain pertinent trust provisions are in Article V labeled "Powers of Trustee." Paragraphs 5.01, 5.06 and 5.14 of this article are crucial ones and they together with their preamble read as follows:

"The trustee or any successor trustee shall have the following powers . . .

"5.01 SPECIFIC AUTHORITY TO RETAIN STOCK. It is my desire that my trustee retain and continue to own all shares of the capital stock of Albright Steel and Wire Company owned by me at my death. It is also my desire that my brother, Ray B. Albright be retained as manager of said company. This is a precatory clause and not an absolute restriction on the powers of the trustee as hereinafter set out; however, my trustee shall give due consideration to this clause prior to disposing of any of the right, title or interest in Albright Steel and Wire Company owned by me at my death, or prior to employing a manager other than my brother. I recognize that changing conditions may warrant the sale of my interest in the company or the employment of a different manager. In no event shall the trustee be deemed liable for any loss or damage due to failure to sell my interest in said company or for failure to employ another as manager.

. . . . . .

"5.06 SELLING. To sell and convey any of the property of the trust or any interest therein, or to exchange the same for other property, for such price or prices and upon such terms as in the trustee's judgment and discretion may be deemed for the best interest of the trusts and the beneficiaries hereunder, and to execute and deliver any deeds, receipts, releases, contracts, or other instruments necessary in connection therewith.

. . . . . .

"5.14 ADDITIONAL STATUTORY POWERS. To enjoy all of the powers provided by, and to administer the trusts herein created in accordance with Title 60 O.S.1961, Sec. 161, 162 and 163, and the 'Oklahoma Trust Act,' as amended from time to time, which act is presently found in Title 60 O.S.1961, Sec. 175.1 through 175.53, both inclusive, all subject to specific provisions contained herein."

After probating decedent's will estate assets were distributed to the trustee among which was 90 percent of the outstanding stock of Albright Steel and Wire Company.[2]

The trustee bank in the exercise of its control of the company implemented the expressed desires of the trustee by electing defendant a director, vice president and manager of the steel corporation and retaining him in these positions from September 1971 to August 17, 1973. On this last date the bank terminated defendant's employment and filed this lawsuit asking the court to not only find it could do away with defendant but it could also dispose of the steel company stock or its assets. Named as defendants were the widow, the three daughters, and Ray B. Albright.

The trustee's petition, after reciting necessary predicatory undisputed facts, alleged "that after giving due consideration to ¶ 5.01 of the Last Will . . . and giving very careful consideration to the desires of the Testator therein expressed . . . the Trustee is negotiating to sell all of the

---

2. His three daughters each owned a third of the remaining 10 percent.

shares of capital stock of Albright Steel . . . owned by the Trust or in the alternative to sell all or substantially all of the assets of Albright Steel . . . [and] further . . . to employ someone other than Ray B. Albright as manager of said company." Both of these acts, the trustee averred, it has determined to be in "the best interests of the Trust and the beneficiaries thereunder." However, the petition continued, "certain questions have arisen as to the power of the . . . Trustee to sell" the stock and remove "Ray B. Albright as manager" and so it "asks the Court to construe the . . . Trust instrument, determine the laws applicable thereto, and confirm the power of the Trustee to do . . . such acts, if . . . ." it in its sole judgment and discretion deems them to be in the best interests of the trust estate and beneficiaries thereunder. The trustee also asked the court to "retain continuing jurisdiction of the Trust for all purposes." Attached to the petition was a copy of Clyde Albright's Last Will and Testament and a copy of the final decree of distribution.

The only defendant to take issue with the trustee's petition was decedent's brother Ray. By means of an answer and counterclaim this defendant denied that trustee's decision to remove him from his managerial post and sell the corporation came about after giving "due consideration" to paragraph 5.01 of the will and "very careful consideration to the desires of the Testator" in the sense of having "appropriate regard" therefor. Instead, he alleged, the bank wrongfully terminated his employment with the steel company without just cause against the express last wishes of the testator, and for this reason trustee should be estopped from obtaining a court construction of the trust approving its actions.

Defendant also assailed the petition for failing to set out any facts in support of trustee's conclusion that the two acts in question were in the best interests of the trust estate and the beneficiaries thereunder, and that the absence of such justifying facts rendered the petition insufficient to invoke judicial attention.

Underlying defendant's counterclaim were these additional allegations. He is 40 years old and possesses a Bachelor of Science degree from the University of Oklahoma where he majored in business management. He has devoted nearly all of his productive years to serving the business that his deceased brother along with other brothers organized and capitalized. More specifically defendant had been an employee of Albright Steel for 16 years prior to his termination as manager, save for a period between August 1, 1963, and June 1, 1964. During such employment defendant handled various jobs "including purchasing and sales functions, as well as serving as acting manager during the absence of" his late brother Clyde. At all times defendant carried out his "responsibilities in a successful and exemplary" manner which is borne out by his brother's tentamentary direction that he be retained as manager, and by the fact that during the 25-month period defendant served as manager following his brother's death, the steel corporation's sales and profits climbed "steadily and dramatically . . . substantially surpassing the sales and profits of any other comparable period in the corporation's . . . history"—achievements which were "in large part directly attributable to Defendant's personal efforts" and devotion to his managerial responsibilities. These gains were realized despite the hampering effect of a series of anti-business events wrongfully wrought by the trustee, namely, (1) appointing Clyde Albright's widow, Virginia M. Albright, now Addison, as a corporate employee and director and granting her a substantial salary, the use of a company-owned Cadillac and corporation credit cards, notwithstanding she lived in Texas and was "available on the corporate premises on an irregular and sporadic basis"; (2) requiring defendant to allow G. A. Lewis, Jr. (decedent's son-in-law who operated a steel business in Lawton, Oklahoma, similar to that of Albright Steel) to

have free access to Albright Steel's warehouse and to purchase inventory for "unreasonably low prices"—transactions which were not only unprofitable to Albright Steel, but "harmful in that they caused said corporation's inventory to become out of balance"; (3) "Failing and refusing to keep Defendant . . . apprised of internal corporate affairs, despite his title as manager and Director, and finding fault with said Defendant's objections to signing corporate minutes of meetings that he never attended and which reflected concurrence on matters and decisions with which he did not concur . . . ."

Defendant further alleged that the bank trustee in connection with the foregoing acts of commission and omission violated the fiduciary responsibilities and duties imposed upon it by the trust and by law, and did so "to serve the wishes and desires of the said Virginia M. Addison" rather than the testator's.

Moreover, says defendant, on the same day the bank fired him, it hired G. A. Lewis, Jr., as manager of Albright Steel in deference to the wishes and desires of Virginia M. Addison" and contrary to the desires of the testator.

Defendant states that his deceased brother intended to confer a benefit on him (Ray Albright) by wording paragraph 5.01 the way he did. This fact, avers defendant, the trustee was fully aware of as well as of the fact that testator wanted his trustee to continue operation of the steel company when it accepted the fiduciary duties involved. Hence discharging defendant contrary to what the testator said he wanted without there being a change of condition warranting either that or the sale of the stock, was capricious and wrongful, depriving defendant of the job he can do best, of various employee benefits (bonuses, profit sharing and pension plan participation) and damaging his professional reputation.

The relief requested is for the court to (1) order defendant immediately reinstated as manager retroactively so that he will suffer no loss of pay or benefits; or (2) if reinstatement cannot be reasonably effected immediately because of inadequate trust administrative capability then to direct the bank to take steps to revamp its trust administrative procedures within a reasonable time or else resign; or (3) grant defendant actual damages in the amount of $250,000.

Is defendant's first proposition correct— that this counterclaim states a cause of action? We think it is. And we also think the answer's general denial raised judiciable questions.

■ First of all it is elementary in passing on a demurrer the factual allegations of the pleading to which it is directed must be taken as true and such facts along with all inferences reasonably arising therefrom are to be considered in determining if a cause of action or defense is stated.

■ With this in mind it would appear to us that the answer evoked at least two substantial questions of fact by denying the trustee's allegations (1) that it had given "due consideration" to testator's intent as expressed in paragraph 5.01; and (2) that removing defendant from the company payroll and selling the stock served "the best interests of the Trust," *and* became necessary by changing conditions of sufficient significance to warrant defeat of testator's express intent.

In its brief the trustee bank concedes these legal points: (a) "the prime object in the construction of a will is to give effect to the intention of the testator"; (b) "the discretionary powers of the trustee cannot be exercised in an arbitrary or unreasonable manner. . . ."

If any deficiency exists in the pleadings it has to be in the petition. No facts does the bank state supportive of conclusions asserted in justification of the action it has taken which it is asking the court to ratify or approve—by implication at least—as a sound or proper exercise of discretion compatible with testator's strong precatory directions. . The shortcoming becomes more

pronounced by the conclusions being traversed by a denial thus putting the petitioner on its proof. So the consequence is that the general and specific denials in defendant's answer alone prevent a demurrer to the answer from being good and a motion for judgment on the pleadings from being sustainable.

Next we come to the counterclaim. Trustee contends defendant is not a *cestui que* trust, or beneficiary of the trust because he is not mentioned in Article IV entitled "Disposition of Income and Principal," and therefore cannot maintain a suit for its enforcement. The correctness of this conclusion, says trustee, "is the crux of the case" and so vital that "the position of trustee and the decision of the Trial Court must stand or fall" on it.

In our opinion the answer and counterclaim of defendant states sufficient facts to establish that the testator employing the language he did in trust paragraph 5.01 intended to bestow a benefit on a trusted brother both as an act of natural affection and of recognition of many long years of faithful service to the corporation. Granted, if divorced from the facts, the objective of paragraph 5.01 might possibly be interpreted as having been intended to benefit the corporation. But it is a strained interpretation and without countervailing evidence we find it difficult to believe Clyde Albright did not intend to bestow a benefit on his brother when he tells his trustee he wants it to keep all of the steel company stock and keep his brother Ray as manager of the corporation until changed conditions warrant otherwise. The intention thus far is clear and unequivocal. And by characterizing the direction as "precatory," which he distinguished from an "absolute restriction" on the general powers of the trustee, the testator was not retreating from or retracting his earlier directive, but was merely paying tribute to reality in recognizing that circumstances might arise requiring either the stock be sold or a different manager be employed, for example, if the brother should become physically or mentally impaired to the point where he could not properly perform his managerial duties. To give emphasis to the testator's strong desire that the stock be kept and his brother be retained as manager the testator solemnly declares that the trustee "shall give due consideration" to what the testator wants done before making any changes even if a change of conditions comes about warranting a departure therefrom. This implies an intent that to warrant a sale of the stock and discharge of the brother, the changed condition must be significant and related to the continued profitable existence of the business—excluding of course changed conditions precipitated by the wrongful or inappropriate acts or conduct of the principal or income beneficiaries, the trustee, or their allies.

The term "beneficiary" is not restricted to recipient of income and principal but is defined broadly by the Oklahoma Trust Act as "any person entitled to receive from a trust any benefit of whatsoever kind of character." 60 O.S.1971 § 175.3(K).

■ We hold that the plain language of paragraph 5.01 when considered in context of the facts and circumstances pleaded in defendant's answer and counterclaim demonstrates an intent on the part of the testator to bestow a benefit on his brother Ray Albright—a benefit which creates an enforceable right in defendant and imposes a correlative legal obligation on the trustee.

■ The remaining question is whether the counterclaim states facts sufficient, if proved and found to be true, to compel a finding that there has been no change of conditions warranting the trustee's actions as contemplated by the testator in paragraph 5.01. We think it does. If the trustee fired Ray Albright or wants to sell the steel stock either to "decrease its burdens" or to "placate the decedent's widow," neither reason falls within the contemplated concept of "changing conditions" warranting the action. While trustee denies its actions have been based on either of these

reasons it fails to suggest any other. Such will have to be the subject of proof upon remand. Hence the counterclaim states a cause of action.

We hold the trial court correctly concluded it had jurisdiction to hear and decide this lawsuit under the provisions of 60 O.S.1971 § 175.23, but that it erred in sustaining the demurrer to defendant's answer and counterclaim, and in sustaining plaintiff's motion for judgment on the pleadings. The order appealed from is therefore reversed and the cause is remanded for further proceedings.

NEPTUNE, P. J., and BACON, J., concur.