**Villard MARTIN, Jr., Trustee of Locke-Schuler Corporation and its consolidated subsidiaries, Appellant,**

**v.**

**R. L. SCHULER, Paul Locke and Joseph W. Turner, Appellees.**

No. 49685.

Supreme Court of Oklahoma.

Nov. 29, 1977.

Rehearing Denied Jan. 19, 1978.

James R. Eagleton, Eagleton, Eagleton & Owens, Inc., Tulsa, for appellant.

Harry M. Crowe, Jr., Crowe & Thieman, Tulsa, for appellees, Turner and Locke.

LAVENDER, Vice Chief Justice.

Appellant trustee (trustee), Villard Martin, Jr., is the Chapter X bankruptcy trustee for Locke-Schuler Corporation, a Delaware corporation, seeking reorganization. The three appellees, R. L. Schuler, Paul Locke, and Joseph W. Turner (individuals), were the principal officers of the corporation. Each of these individuals had entered into a separate, but identical, written agreement with the corporation for the issuing to each a certain number of shares of stock for a particular price and under the terms therein contained.[1]

At the time of this appeal, the record shows the trustee had filed separate petitions against each of the individuals seeking money judgment for the purchase price of the stock. The trial court sustained a general demurrer to each of the petitions and found the written agreement sued upon to be an executory contract not capable of being performed due to Chapter X proceedings. Trustee refused to amend and actions were dismissed. Trustee appeals. There was agreement to consolidate for this appeal.

As correctly identified by the trial court, the thrust issue comes with the determination as to whether the written agreement is a stock subscription or an executory contract. Trial court found the agreement to be an executory contract that was not capable of being performed due to the Chapter X reorganization proceedings. Trustee contends the agreement is a stock subscription, or, if an executory contract, then it is capable of being performed. In either event, the petitions were not demurrable. Individuals urge the correctness of the trial court in finding the agreement sued upon to be an executory contract, as opposed to a stock subscription, that is not capable of being performed due to the Chapter X bankruptcy.

In finding the written agreement not to be a stock subscription but rather an executory contract, principal reliance is upon *Stern v. Mayer*, 166 Minn. 346, 207 N.W. 737 (1926), 46 A.L.R. 1167. There a distinction is made between an executory contract for sale of corporate stock and a subscription thereto. The important element becomes the intent of the instrument to make the purchaser a stockholder prior to full performance of the purchase agreement. If that intent is present, then the agreement is a subscription, and if absent, then the agreement is an executory contract for sale of stock. In present case, the trial court in his findings pointed to some of the same circumstances found in *Stern, supra*, to make a sale rather than a subscription; i. e., deferred payment of one year with no interest earned; and option of corporation

1. "STOCK SUBSCRIPTION AGREEMENT

"The undersigned hereby agrees with LOCKE–SCHULER CORPORATION (LOCKE–SCHULER), a Delaware corporation, to purchase  100,000  shares of common stock of LOCKE–SCHULER, having a par value of ten cents ($.10) and to pay the amount of Two Dollars ($2.00) per share subscribed for a total of $200,000.00 (total amount due upon my subscription).

"I agree to pay for such shares as follows: $ –0– in cash accompanying this subscription and the balance of $200,000.00 within ten (10) days from December 15, 1974. In the event that the total amount due under this subscription is not paid on or before December 25, 1974, LOCKE–SCHULER may at its option cancel this subscription, in which event all payments theretofore made on account hereof shall be deemed to be liquidated damages for my failure to carry out the terms of this subscription, or demand specific performance. I understand and agree that no shares will be issued hereunder until such time as I have made payment in full for all shares subscribed to hereunder.

"Dated this 15th day of December, 1973.

/s/
Subscriber

Address:

"The receipt of $ –0– deposit from the subscriber herein is hereby acknowledged. Thus subscription is approved this 15th day of December, 1973.

LOCKE–SCHULER CORPORATION
By /s/
President."

to cancel, if payment not timely made. Trial court also commented on the liquidated damage or right to specific performance as indicating the executory nature of the agreement. Trial court saw no intent to make the individual a stockholder without complete performance.

The entire concept of the distinction found in *Stern, supra,* between contracts for the issue of share by way of subscription and by way of purchase and sale has been labeled unsound and confusing. Ballantine on Corporations, Rev.Ed., § 191.[2] *Stern, supra,* is called "erroneous in principle." § 191, p. 452. That treatise would stress (1) the joining in the enterprise of accumulating capital for the corporation, and (2) creation of new shares. Ballantine

would require the stock to be issued, or in existence, to be the subject of a purchase or sale. If the contract is for the taking of new shares, yet to be issued, then it is a subscription as a commitment to contribute a certain amount of capital to the enterprise.[3] Purchase from a corporation of its unissued stock is a commitment to contribute a certain amount, being the total purchase price, to the capital of the corporation and is a subscription. It is not an executory contract.

■ We agree with Ballantine. If the agreement with the corporation is in proper statutory form[4] and has the effect of creating or bringing into being new stock with the purchase proceeds adding to the corpo-

---

2. Section 191 reads in part:

"Supposed distinction between subscription and purchase contracts for new issue of shares. Much confusion has been caused in the law of subscriptions by a distinction attempted by many courts between contracts for the issue of shares by way of subscription and by way of purchase and sale. The distinction is supposed to be based on the intention of the parties and the terms of the agreement. * * * (Footnote with citations omitted).

* * * * * *

" * * * If the agreement is construed as an executory contract of purchase rather than as a subscription contract the principal consequences are the following:

"(1) * * *

"(2) * * *

"(3) The most serious consequence of all is that bankruptcy or insolvency of the corporation will terminate its claim against the purchaser on the theory that it can no longer perform its side of an executory contract by delivery of a valid certificate and that the consideration has failed. (Footnote with citations omitted)."

3. Section 191, at pgs. 252, 253, reads in part:

"This decision (*Stern,* supra) appears to be erroneous in principle. In a federal case it was well said that 'all of those who join in the enterprise of accumulating the capital of the corporation, represented by subscriptions to an original issue of capital stock, should be regarded as subscribers, rather than as purchasers, whether the agreement is made before or after the articles are filed.' *Any agreement for* the original issue or *creation of shares is a 'subscription,' an agreement to contribute capital.* This is a form of security ab initio, which carries with it the obligation to pay the subscription price. The subscriber acquires a right to a profit-sharing security, even though his

right to a certificate is made dependent upon compliance with his contract. He should be considered an equitable owner of shares from the time of his contract, as far as creditors are concerned, and is not excused as against creditors even if the corporation has become bankrupt and can no longer deliver a certificate.[44]

"In the case of a contract for the issue or creation of shares, there is no share or property in existence which can be the subject of a purchase, sale or transfer. The concepts and terminology of purchase and sale do not serve any useful purpose here, but raise a specious analogy which has misled the courts. Any contract to 'purchase' or take new shares is a security issue. The main object of a subscription is to make a commitment to contribute a certain amount of capital to the enterprise as the consideration of a profit-sharing contract. A person cannot have the benefits of such a profit-sharing contract without bearing its burdens also. The ordinary doctrine of dependency of promises applicable to sales contracts is not suited to the situation of such a subscriber. (Explanation and emphasis added.)"

"[44] *Regan [Reagan] v. Midland Packing Co.,* 298 Fed. 500, 505 (D.C.Iowa). See *Hawley v. Upton,* 102 U.S. 314, 26 L.Ed. 179; *Smith v. General Motors Corp.,* 289 Fed. 205, 208 (C.C.A.), by subscription agreement vesting of some of the rights of a stockholder may be postponed without destroying the character of the transaction as a subscription; *New Haven Trust Co. v. Gaffney,* 73 Conn. 480, 47 Atl. 760; *Lincoln Shoe Mfg. Co. v. Sheldon,* 44 Neb. 779 [279], 62 N.W. 480; *Spear v. Crawford,* 14 Wend. (N.Y.) 20, 28 Am.Dec. 513; Minn.Bus.Corp.Act (1933) § 16–XI; Stevens, Corporations (1936) 344."

4. 18 O.S.1971, Sec. 1.31; Del.Code Ann.1974, Title 8, Sec. 166.

ration capital, then that agreement is a subscription and a commitment to contribute to the capital of the enterprise. This approach is more reasonable and definite than that of intent as to whether the purchaser was to become an immediate stockholder.

■ Here, the purchase was of new stock to be issued. The individuals were principal officers. There are allegations in the petitions that these officers held out to the investing public, and others, that these agreements were enforceable and assets of the corporation. This reasonably infers the individuals were joining in the enterprise of accumulating capital for the corporation through the written agreements made the subject of this litigation. In passing on a demurrer to a petition all allegations of fact must be taken as true, together with all reasonable inferences therefrom. *Commercial Union Fire Insurance Co. v. Kelly*, Okl., 389 P.2d 641 (1964); *Liberty Nat. Bank & Trust Co. of Okl. City v. Albright*, Okl.Ct. App., 538 P.2d 620 (1975). These agreements are determined to be stock subscriptions rather than executory contracts for the purchase and sale of stock.

■ With the determination the agreements here were stock subscription, then the issue as to whether the corporation seeking reorganization can perform is no longer material. The individuals, as subscribers, made a commitment to contribute to the corporation's capital within ten days from December 15, 1974. To be enforceable, that commitment is not dependent upon the issuing and delivery of the stock certificates as evidence of ownership. "In the case of insolvency, the true issue is, who should bear the loss, the unfortunate creditors who rely on the capital contributions agreed to be made or the subscribers who will profit if the venture to which they agree to contribute proves a success." *Ballantine, supra*, p. 453.

Determination of other issues raised on appeal need not be made under the views here expressed. Trial court erred in sus-

taining the demurrers and dismissing the actions.

Reversed and remanded.

All of the Justices concur.

