# Alabama Penny Savings Bank *v.* Holmes.

### *Trespass to Realty.*

(Decided December 4, 1913.   63 South. 969.)

1. *Trespass; Punitive Damages; Evidence.*—Punitive damages were not authorized in this action, as the evidence shows that neither of defendants acted willfully or maliciously, or intended to violate the plaintiff's rights, or the law.

2. *Appeal and Error; Assignments; Joint.*—Joint assignments of error cannot be considered where the rulings complained of therein affected only one of the two defendants.

APPEAL from Jefferson Circuit Court.

Heard before Hon. E. C. CROWE.

Action by Fanny Holmes against the Alabama Penny Savings Bank and others, for damages for trespass to

realty.   From a judgment for plaintiff defendants appeal.   Reversed and remanded.

Transferred from the Court of Appeals.

GREGG & BURROWS, for appellant.  No brief reached the Reporter.

GEORGE E. BUSH, for appellee.  No brief reached the Reporter.

SAYRE, J.—Action of trespass to realty by appellee against appellants.  Most of the rulings complained of affected only one or the other of the defendants separately, not jointly; but the assignments of error are joint.  Without a severance and a separate assignment, we cannot consider the assignments based on errors of that character.

Appellants complained in the trial court that the assessment of damages was excessive and unwarranted by the evidence, and the court's adverse rulings is presented for review.  We think the point well taken, and that the judgment ought to be reversed on that ground. If the verdict was intended as an award of compensation only, it was enormously excessive, even though measured by the standard of plaintiff's testimony, not to mention the great weight of defendants' evidence which went to show that the damage suffered by plaintiff was merely nominal.

But appellee (plaintiff) contends that the jury was authorized to assess punitive damages.  We will state the reasons of our conclusion as to that .  It appeared without dispute that the defendant Gus Allen actually did the things relied on as constituting a tortious intrusion upon plaintiff's alleged possession.  Plaintiff's effort was to hold the defendant the Alabama Penny

Savings Bank, on the theory that Allen acted by its authority. The damage done (on April 3, 1912) consisted in the destruction of some growing vegetables, the remnant of a winter crop of onions and turnips, when on one occasion Allen tied his cow on a part of the premises which had been wired off for a garden. Plaintiff also testified that Allen tore away a partition fence between his (Allen's) premises and lot 16, the locus in quo; but defendants brought testimony to show, and it was not contradicted, that Allen tore away an old fence, and replaced it with a new one a few inches over in plaintiff's direction on a line which had been located as the property line by a surveyor he had employed for the purpose, in which location the bank acquiesced. Apparently plaintiff's case depended upon the evidence she offered of a bare actual possession, though it may be that she relied also in the court below upon the fact that she was one of the children and heirs of a former owner as proof that her possession was rightful. Whatever the precise contentions may have been on the trial, the competency of the testimony adduced, over the bank's objection, with the purpose of establishing her contention that the bank was liable because Allen acted on its procurement or advice being conceded, and its sufficiency to that end being also conceded, though it seems much more probable that the bank consented only, still that testimony, in connection with some other, left no reasonable ground for doubting that Allen acted in good faith in reliance upon the bank's authority and its supposed ownership and possession of the property. Now the bank on its part claimed title through the foreclosure of a mortgage which had been made by plaintiff's father covering lot 16 and lot 8; the latter being the lot upon which the ancestor had lived with his family, and which was separated from lot 16 by an alley-

way. After the death of plaintiff's father the bank leased the home lot to plaintiff's brother Elbert; the lot in controversy it leased to a grocery company which kept its wagons and animals on the lot in a stable there. In 1910 the grocery company had quit lot 16, and plaintiff's brother began to keep his stock in the stable. In that year the bank recovered possession of both lots in an action of unlawful detainer against Elbert, and he moved away, leaving plaintiff and two minor brothers in the dwelling. Plaintiff thereafter kept a mule in the stable on the other lot, though the bank does not appear to have been aware of the fact. In 1912 the bank sued plaintiff and her younger brothers in ejectment for the home lot, and recovered judgment on February 23d. Thereafter plaintiff, without waiting to be dispossessed by a writ, stored some old furniture that had belonged to her mother in a room or stall of the stable, and moved away to a place about one-half a mile distant. She testified, however, that she went back to the garden on lot 16 to gather and did gather onions and turnips, and had planted some cabbage and lettuce seed and corn between the time of her eviction from the other lot and the trespass for which this suit was brought. Close neighbors to the lot in question saw little of these operations, which very clearly on all the testimony were of trifling consequence. Previously the bank had warned plaintiff not to go upon the lot. There is nothing going to show that the bank had any actual notice of plaintiff's alleged possession after the suit in ejectment. When Allen tied his cow upon the premises, plaintiff contented herself with asking why he did it. He replied that the bank or one of its officers told him to do it. This was the entire content of that occasion. Plaintiff seems to have made no objection whatever to the

removal of the fence. The inference that either Allen or the bank acted wantonly, willfully, recklessly, maliciously, corruptly, insultingly, outrageously, or in conscious and intentional violation of the law or the rights of plaintiff, must be inferred, if at all, from the facts stated. But on these facts, which, perhaps, we have been at unnecessary pains to state, we think the defendants might well have considered, and did in fact consider, that the bank's title to the locus in quo and its right of possession had been vindicated in the courts, and its possession in fact established as against plaintiff, so that, conceding every other doubtful question to be resolved in favor of plaintiff, appellee, the assessment of exemplary damages rested upon a farfetched inference which the court should not have allowed to stand. The facts, as we view them, entirely exclude the inference that defendants, or either of them, intended to violate the law by the infliction of injury for the purpose of frightening off a poor woman from property which she had inherited from her parents, as appellee now states her case—the theory which most likely prevailed with the jury in the court below. But, whether this or some other interpretation of the evidence induced the verdict, it should have been set aside on appellants' motion for a new trial.

Appellee has cited the cases of *Brown v. Floyd,* 163 Ala. 317, 50 South. 995, in which this court held that the evidence, not stated in the report, tended to show "an unwarranted and unlawful, if not a malicious, trespass," and *Garden v. Houston,* 163 Ala. 300, 50 South. 1030, a case of trespass to personalty, in which defendant was shown to have taken a horse from plaintiff's wife at the point of a pistol. Here, on the facts shown and stated, the decision in *Southern Ry. v. Hayes,* 183

Ala. 465, 62 South. 847, may be consulted with more profit on another trial.

Reversed and remanded.

McCLELLAN, MAYFIELD, and SOMERVILLE, JJ., concur.