139 So. 250

**GILL PRINTING CO. et al. v. GOODMAN.**

I Div. 686.

Supreme Court of Alabama.
Jan. 14, 1932.

98

Lyons, Chamberlain & Courtney, of Mobile, for appellants.

Harry T. Smith & Caffey, of Mobile, for appellee.

**FOSTER, J.**

This is a suit by the trustee in bankruptcy to collect a balance due by some of the stockholders of the Handy Andy Community Stores of Alabama, Inc. Stevens v. Hopson, 215 Ala. 261, 110 So. 147; Hundley v. Hewitt, 195 Ala. 647, 71 So. 419.

The corporation was formed under the laws of Alabama by declaration and necessary affidavits filed in the office of probate judge of Mobile county on November 23, 1927.

The bill of complaint alleges that all the respondents were subscribers to its capital stock. The contention is made that the other allegations of the bill show that they were not subscribers to its stock, but that they agreed to become purchasers of stock, and that the bill does not show that the trustee has offered or in fact is able to issue and deliver the stock, on account of the bankruptcy and insolvency of the corporation. They contend that the bill is subject to demurrer on that account, and that the facts and evidence show that they are not subscribers but purchasers of the capital stock by executory contract, and on that account, as such, they are not bound to pay for the stock because certificates cannot be issued and delivered to them. They also concede that subscribers to the common stock, if such subscription did not include preferred stock, are not controlled by the principle which they invoke.

In the case of Stern v. Mayer, 166 Minn. 346, 207 N. W. 737, 738, 46 A. L. R. 1167, referring to this subject it is said:

"The distinction between the sale of corporate stock and subscription thereto is that a subscriber has certain attributes in the way of rights, privileges, and liabilities, ordinarily including title, that do not attach to a purchaser. Plaintiff asks to have this instrument construed as a subscription with the attributes mentioned withheld from the defendant, or suspended until he makes payment. The absence of such rights and liabilities is the very thing that prevents holding the instrument to be a subscription. If these attributes are to attach only on complete performance by

defendant, the transaction is ordinarily a sale. The subscriber by the terms of his contract becomes the owner of the stock before the certificate is issued or delivered. * * * Whether the instrument indicates an intention to become a stockholder prior to the party thereto fully performing his contract is the important element. The effect of an unconditional subscription of stock is to give him an interest in the corporation, i. e., it makes him a stockholder."

It is also held that the bankruptcy of the corporation does not prevent a recovery by its trustee of the unpaid subscription to its common stock by its stockholders, unless the company made an express agreement to issue such stock, or other executory contract.

In the notes to 46 A. L. R., at page 1172, there appears a further discussion of the subject.

It is thus expressed by Fletcher on Corporations, vol. 5, page 5613, § 3427: "So long as the contract remains executory the issue or tender of a certificate as evidence of the stock is a condition precedent to the right to maintain an action for the price. But where an actual sale has been made and the title to the stock has passed there is no distinction in this respect between a sale and a subscription and under such circumstances the purchaser is a stockholder though no certificate has been issued to him."

In the case of Stern v. Mayer, supra, the court held the contract to be executory, and was apparently largely influenced by the circumstance that the corporation had expressly agreed to issue a certificate of stock. It was on this point said: "Where the contract in a stock subscription provides for delivery of stock when paid for, the acts must be regarded as contemporaneous. And in such case [it proceeds] the corporation's inability to perform should disable it from enforcement against the subscriber."

The case of Galbraith v. McDonald, 123 Minn. 208, 143 N. W. 353, 354, L. R. A. 1915A, 464, Ann. Cas. 1915A, 420, refers to the subject as follows: "Text-books and decisions assert that there is distinction to be noted between sales of corporate stock and subscriptions thereto. That is undoubtedly true in respect to executory contracts of sale. But where an actual sale has been made, and the title to the stock has passed, we fail to see any distinction between persons who are subscribers to stock and those who have actually bought it of the corporation."

In our case of Jefferson County Savings Bank v. Compton, 192 Ala. 16, 68 So. 261, a similar defense was interposed to a suit on a note by a bankrupt corporation. The court refers to the rules applicable to subscribers. The record shows that there was a sale as distinguished from a subscription, but no condition is shown to the ownership of the stock. The purchase money was not paid, but that did not show an executory contract by which the title did not pass. Without making any distinctions, the court held that the failure to issue the stock was no defense in the absence of a demand. The inability to issue by reason of bankruptcy was not set up in defense. But the rule applied is consistent with the authorities governing an executed sale. The sale may be executed, as there shown, without an issuance of the certificate, which is only evidence of title.

The declaration of incorporation here involved and affidavit and subscription list show that appellants Bruner, Welden, Segrest, J. Platt Roberts, and E. A. Roberts were original subscribers to common and preferred stock, who signed the declaration of incorporation and the subscription list, and their notes were made prior to the filing of the incorporation papers. The declaration of incorporation provides that its incorporators who had subscribed to its stock shall pay one dollar per share of common stock, and the balance of the authorized common stock will be sold for twenty-five dollars per share. The common stock was non-par, and the preferred was fifty dollar par. All should pay the same for preferred stock. The notes of the above-named shareholders who were incorporators subscribed at one dollar per share for common stock and fifty dollars per share of preferred. The other appellants, Gill Printing Company, William R. Meeker, and L. Lerio executed contracts of the same tenor as those executed by the former, but were not incorporators, and their contracts were made after incorporation, and at twenty-five dollars per share of common stock. The instruments executed by all of the appellants were promissory notes reciting as the consideration the purchase price of the named shares of stock, common and preferred separately, and provide that the "title to the named security shall vest and remain in said company until the debt therein is fully paid," and that "the said company shall have full power and authority to sell, assign and deliver all or any part of the above mentioned property and securities at private or public sale," etc., and apply the proceeds to the payment of the balance of the note unpaid, with the surplus, if any, payable to the makers, etc. There is no agreement about the issuance or delivery of the certificate, but it provided that the dividend shall be held by the company in lieu of interest.

It seems to us very clear that those who were incorporators and signed the subscription list and executed the notes prior to or at the time of incorporation were subscribers and not purchasers; but that those who executed notes later for a different consideration

were not subscribers but purchasers, according to the text which we have quoted from the Minnesota case, which is well supported by authority.

Appellants therefore concede that if such is the situation, the subscribers would be due the amount agreed to be paid for the common stock but not for the preferred, and claim that as their contract for the two was joint, it is not enforceable to any extent.

Reliance is made upon Snodgrass v. Zander, 106 Ark. 462, 154 S. W. 212, 214. That case cites 10 Cyc. 392 (now 14 C. J. 550) to the effect that such stock is somewhat different from common stock, in that the express or "implied promise of the company to issue such stock, and of the subscriber to pay for it, * * * are concurrent and dependent, and that an action by the company on such a subscription cannot be maintained until it has issued or tendered the stock." No such question was involved in the Arkansas case, because in it the company issued and tendered the certificate before filing suit. But Cyc., supra, and C. J., supra, also cite St. Paul R. R. Co. v. Robbins, 23 Minn. 439. That is the only citation for the statement in the text. That case does not undertake to draw any distinction between common and preferred stock. But it shows that its argument does not apply to those subscribers who became such prior to and for the purpose of effecting the organization. Whereas, in the case of Stern v. Mayer, supra, the same court, in respect to stock subscriptions, following earlier Minnesota cases, observes that "in an action upon a stock subscription, which does not by its terms require the execution and delivery of the certificate before or concurrently with payment, an allegation of nondelivery of stock is no defense."

We can see no difference in principle in the effect of a subscription for common stock and for preferred stock, and the right to sue upon such subscription contract, and no such difference is pointed out in the cases cited.

While W. R. Meeker, Gill Printing Company, and L. Lerio were purchasers, their defense is to be controlled by the inquiry of whether their contracts of purchase were executed so that they thereby became stockholders without the issuance of certificates or a compliance with other conditions precedent.

It would, of course, be an executory contract if the company merely agreed to sell at a future date and the buyer to buy at that time and pay for the stock. Under such a contract there is no actual sale, in which the purchaser acquires a property right in the stock. But under a conditional sale contract, the sale is made and perfected with a reservation of title only as security for the purchase price. The buyer has been held by this court to be the "general and beneficial owner" of the

property with the burden of taxation as such, Ex parte State (State v. White Furniture Co.), 206 Ala. 575, 90 So. 896, and by the same authority the seller has a chose in action, or "solvent credit," as classed for taxation, and is a lienholder under section 9021, Code, and is subject to its penalties. Gen. Motors Accept. Corp. v. Crumpton, 220 Ala. 297, 124 So. 870.

We think, therefore, that the transaction shows a sale, though title to the stock is retained as security. That makes the purchaser its owner, subject to the security created by the contract. Certificates of stock are not necessary to such ownership. Jefferson County Sav. Bank v. Compton, supra.

In equity, when the contract sought to be enforced imposes upon complainant the duty to do an act contemporaneously with or as a condition precedent to the relief sought by him, he must allege at least his ability and willingness to do such act, and the decree usually is upon the condition that such act be done by complainant. But, on the other hand, when the bill shows that complainant is not required to do any act of equity to entitle him to such relief, an offer to do equity generally or any specific act of equity is not necessary to sustain the bill against demurrer. This has been discussed in several of our cases. Sumners v. Jordan, 220 Ala. 402, 125 So. 642; Davis v. Anderson, 218 Ala. 557, 119 So. 670, and cases there cited.

We cannot agree, therefore, that the bill is subject to demurrer, nor that relief should be denied on that ground in so far as concerns any of the appellants.

Some of the appellants have also defended on the ground that the contracts cannot be enforced because at the time of their execution the stock had not been registered as provided by article 12 of chapter 335, Code (section 9877 et seq., as amended), commonly called the Blue Sky Law. By an amendment of section 9880, Code (Acts 1927, pp. 555, 560, § 2, approved September 9, 1927), it is provided that there shall be exempt from its operation subscriptions for capital stock executed prior to incorporation, etc.

While that act was approved September 9, 1927, and some of the subscribers had signed their contracts of subscription prior to that time, the declaration of incorporation containing a subscription list signed by them after that date has effect, so far as this discussion is concerned, from the date of such incorporation. 2 Fletcher on Corporations, p. 1136; Planters' & Merchants' Ind. Pack. Co. v. Webb, 156 Ala. 551, 46 So. 977, 16 Ann. Cas. 529; Knox v. Childersburg Land Co., 86 Ala. 180, 5 So. 578. So that the express provisions of law exempted them from its operation. All the appellants are therefore exempt except W. R. Meeker, Gill Printing

Company, and L. Lerio. The last two of these purchased after the stock was effectually and duly registered.

The company was incorporated November 23, 1927. The securities commission, on December 8, 1927, ordered the stock registered, but with condition precedent upon the execution of a bond which was approved January 16, 1928. Meeker purchased December 11, 1927, which was between those dates. This suit was begun July 17, 1929. So that the only question now is whether Meeker can avoid his purchase under such circumstances. The Code, § 9899, provides that such failure shall render the contract of sale voidable at the election of the purchaser, and gives him a right of action to recover his payments within two years (now one year, Acts 1931, p. 799, § 10).

When a contract is infected with such incidents as render it void as against public policy, the courts do not interfere, but will leave the parties where they have placed themselves, unless a statute confers a right of action. Upon this principle, it is well settled that "contracts specially prohibited by law, or the enforcement of which violated a law, or the making of which violated the law which was enacted for regulation and protection, as distinguished from a law created solely for revenue purposes, is void and nonenforceable." Ellis v. Batson, 177 Ala. 313, 58 So. 193, 194; Sunflower Co. v. Turner Supply Co., 158 Ala. 191, 48 So. 510, 132 Am. St. Rep. 20; Youngblood v. Birmingham Trust & Savings Co., 95 Ala. 521, 12 So. 579, 20 L. R. A. 58, 36 Am. St. Rep. 245; Western Union Tel. Co. v. Young, 138 Ala. 240, 36 So. 374; Yarbrough v. Avant, 66 Ala. 526; Gunter v. Leckey, 30 Ala. 591; Folmar v. Siler, 132 Ala. 297, 31 So. 719; Birmingham Trust & Savings Co. v. Curry, 160 Ala. 370, 49 So. 319, 135 Am. St. Rep. 102; Muller Manufacturing Co. v. First National Bank, 176 Ala. 229, 57 So. 762; Boyett v. Standard Chemical & Oil Co., 146 Ala. 554, 41 So. 756; Knight v. Watson, 221 Ala. 69, 127 So. 841; Bowdoin v. Alabama Chemical Co., 201 Ala. 582, 79 So. 4.

The registration of stock for sale under the Blue Sky Law is not a revenue measure, but is a regulation to protect the investing public. The law prohibits and makes a crime the sale of certain stock in corporations unless registered. Sections 9882, 5406, Code. A suit on a contract of sale in violation of that law requires proof of an illegal transaction to support it, and the court will not lend its aid or assistance in any respect except as the statute expressly authorizes. Such defense is not in the nature of a rescission. And without the aid of a statute the purchaser could not recover his payments, which have to that extent become executed, and neither can the seller recover the unpaid price of stock thus illegally sold. Thornhill

v. O'Rear, 108 Ala. 299, 19 So. 382, 31 L. R. A. 792; Long v. Ga. P. R. R. Co., 91 Ala. 522, 8 So. 706, 24 Am. St. Rep. 931; Town of Cottonwood v. Austin, 158 Ala. 117, 48 So. 345; General Electric Co. v. Ft. Deposit, 174 Ala. 179, 56 So. 802.

But section 9899, Code, modifies this rule so that a purchaser in such an illegal transaction may, within two years after the sale, avoid it, and recover his payments. But it did not have the effect of taking the transaction out of its status as being in violation of law so as to authorize the seller to recover upon any feature of the transaction. As to the seller, the illegality continues to prevent a recovery. Such is the interpretation of a similar statute in Georgia by its Court of Appeals, affirmed by the Supreme Court. Tomberlin v. Waycross, 41 Ga. App. 77, 152 S. E. 300; Id. (Ga. Sup.) 160 S. E. 92.

In the case of In re Racine Auto Tire Co. (C. C. A.) 290 F. 939, cited by appellee, the company had been adjudged a bankrupt. Certain preferred stockholders sought to rescind their purchase on account of the failure to observe the Wisconsin Blue Sky Law, and recover the amounts paid. No law of Wisconsin is referred to which expressly so authorized, and the Circuit Court of Appeals held that, assuming that such right otherwise exists, they could not do this after bankruptcy had occurred, and after they had accepted dividends and otherwise acted as stockholders. The court did not discuss the principle which we think controlling, that the transaction, being prohibited by law, cannot be the foundation of a suit by either party unless authorized by law. Again, under our statute, section 9899, bankruptcy within the two-year period would not set aside its express terms.

We have shown that none of the transactions are infected with such infirmity except the sale to Meeker. He filed an answer alleging facts showing that the stock had not been registered as required by law, and he asserted that the sale was voidable, and that he elected to avoid it under section 9899. While we think this defense in this case is not dependent upon an election on his part to avoid the sale under section 9899, but his allegations showing the illegality of the transaction and its effect sufficiently presents the defense, and though we think his election to avoid was unnecessary and inapt, it was not fatal to his defense. The proof established the facts thus alleged, and the judgment, we think, was improperly rendered against him.

But such error is alone available to Meeker. There was no error here which was applicable to the other appellants. They did not assign errors separately; neither was there a severance ordered by this court in respect to their assignment. Upon such assignments, the error in rendering judgment

against Meeker is not available to him. Anthony v. Seed, 146 Ala. 193, 40 So. 577; Barrett v. McCarty, 157 Ala. 449, 48 So. 49; Lehman v. Gunn, 154 Ala. 369, 45 So. 620; Wilson v. Alston, 122 Ala. 630, 25 So. 225; Killian v. Cox, 132 Ala. 664, 32 So. 738, 739; Cook v. Atkins, 173 Ala. 363, 56 So. 224; Alabama Penny Savings Bank v. Holmes, 184 Ala. 469, 63 So. 969; Shelby Iron Co. v. Morrow, 209 Ala. 116, 95 So. 370.

Appellant L. Lerio has also averred in his answer that the sale of the stock to him was made by the corporation through an unlicensed salesman prohibited by section 9896, Code. If that section applies to sales made by the company of its stock after the registration of it by the commission, and such a sale by the company through a salesman employed by it is void under that statute, it is sufficient to say that each appellant did not make that defense in his answer; and if available to Lerio, it is not reversible upon a joint assignment of error.

As we view the case, it is necessary to affirm the decree as to all appellants.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.