199 So. 695

**PATTERSON v. UNITED STATES BOND & MORTGAGE CO. et al.**

**6 Div. 747.**

Supreme Court of Alabama.

Dec. 19, 1940.

Rehearing Denied Jan. 23, 1941.

Basil A. Wood, of Birmingham, for appellant.

Beddow, Ray & Jones and G. Ernest Jones, all of Birmingham, for appellees.

476

**KNIGHT, Justice.**

Bill by C. D. Patterson, as ·assignee of Grace A. Patterson, against the United States Bond and Mortgage Company, a corporation, and the two receivers of said corporation, praying for a moneyed judgment and decree against said corporation, and to require the receivers "to list said judgment and decree when entered, in accordance with the class to which it may belong as a claim against the corpus of said receivership, and direct payment thereof along with other creditors of the class of claims so established," and for general relief.

It appears from the bill that one Grace A. Patterson, in September, 1927, entered into three separate contracts with the corporation respondent for the purchase of a certain number of shares of "non par cumulative seven per cent guaranteed and additional participating preferred stock," and a like number of non par common capital stock, of said corporation. Each of said contracts was on a printed form with identical contractual terms, except as to dates and amounts involved. The aggregate of the first mentioned class of stock was 110 shares, and the aggregate of the second mentioned class was likewise 110 shares. A copy of one of the contracts is attached to the bill as Exhibit "A" and appears in the report of the case.

It appears that on the first of said contracts the said Grace A. Patterson paid the corporation the aggregate sum of $380: on the second contract she paid the sum of $950: and that on the third contract she paid $760.

It further appears that on February 4, 1930, the respondent corporation, under the terms of said contracts, entered and credited Miss Patterson with interest as follows: On first contract $41; on second, $115; and on the third $82.

It further appears from the bill that on, towit, February 24, 1930, the United States Bond and Mortgage Company notified said Grace A. Patterson in writing that it had, pursuant to the provision in the contract of purchase, elected to cancel her "*reservation*" for 110 shares of common and ·110 of preferred stock, on account of her failure to continue the payments called for by said contracts, and that it would proceed in accordance with the terms of said contracts as to repayment of the sums due thereon.

It further appears from the bill that the said Grace A. Patterson did on September 26, 1931, "transfer, sell, and assign to C. D. Patterson, the complainant, all the stock and all the interest in stock which she then had in the United States Bond and Mortgage Company, together with any claim of any kind or description she might have against said corporate respondent."

It also appears from the bill that the corporate respondent had been placed in receivership, in the Circuit Court of Jefferson County, and that the court had appointed J. Kirkman Jackson and Carlton P. Smith receivers "for the management of the affairs of said corporation," and that they had duly qualified and were acting as such receivers under the orders of said court.

The bill further avers that on, towit, December 15, 1931, the complainant filed suit in the law division of the Circuit Court of Jefferson County, seeking to recover the amounts paid by said Grace A. Patterson on said stock contracts, and that said action had been transferred by written consent of all parties and consolidated with the receivership then and now pending in said court.

On final hearing, the court denied the complainant the specific relief prayed for, but held and decreed that the complainant, as assignee of Grace A. Patterson, was in equity and good conscience entitled to be considered and treated as a shareholder of said corporation to the extent that the money paid by said Grace A. Patterson upon her subscription contracts, less the commission paid, at the rate of 11% to the fiscal agent for procuring of said subscription contracts, would pay for shares of stock in the corporation of the class and at the price provided for by the terms of said subscription contracts. The court then proceeded to ascertain that the money so paid by Miss Patterson, less said com-

missions, would and did entitle complainant to 38%₂₅ shares of "participating preferred stock and a like number of shares of common stock." That in the distribution of the assets of said corporation the said complainant was entitled to share according to said ascertainment, etc. From this decree complainant appeals.

■ It is not here insisted that complainant's assignor ever paid in full for any shares of stock, on the contrary, the evidence shows that she ceased to make payments on said contracts before completing payment under any of them. Under the terms of said subscription contracts for stock, the corporation was not to issue any certificate of stock to the said Grace A. Patterson until the stock was paid for in full.

The subscription contracts contained the following provisions, among others:

"The Company agrees to issue Stock Certificates for the above number and kinds of shares when they are paid' for in full by applicant. The preferred shares shall provide for an annual dividend of $3.50, guaranteed on each share, payable January 1st and July 1st of each year, and in addition thereto after 7 c has been paid on common the preferred shall share equally with the common in any greater earnings of the Company, payable from surplus earnings only.

"The applicant agrees that upon failure to carry out the terms of payment for 60 days, time being the essence of this contract, the Company may cancel this reservation and offer for resale the shares represented herein. And after deducting the cost of this sale and such resale, refund to applicant any amount paid in by him less such expense."

Under the plainest terms of said agreements, the corporation merely agreed to issue the stock to the said Grace A. Patterson, if and when she had paid in full therefor, and therefore no title to any of the stock ever passed into Miss Patterson, or into her assignee, the complainant. The contracts were wholly executory. Gill Printing Co., et al. v. Goodman, 224 Ala. 97, 139 So. 250. We confess our inability to see just how the court held that the complainant, as such assignee, was entitled to a decree adjudging him to be "in equity and good conscience," the owner of 38%₂₅ shares of participating preferred stock, and a like number of shares of common stock.

■ Complainant was either entitled to have a moneyed decree in his favor for some amount, or he has not made out a case where the right to a refund has yet accrued to him. This, then, requires us to determine what steps, if any, the corporation took to carry out the provisions of the contracts which required it, on the cancellation of the subscription contracts, to sell the stock which Miss Patterson had subscribed for, in order to make refund of the amounts paid on her subscriptions.

The respondents, by their answer, admit the cancellation of the subscription contracts as of date February 24, 1930, but as their excuse for not making any refund to Miss Patterson, or to her assignee, they say "that subsequent to the date of the cancellation of the aforesaid subscription contracts market conditions in this community have been such that it has been impossible for the respondent, United States Bond and Mortgage Company, to resell the shares of stock subscribed for by Grace A. Patterson;" and it, the said United States Bond and Mortgage Company, insisted that its liability to make refund of the deposits made by Miss Patterson was contingent upon the ability of said company to procure a "substituted subscriber to purchase the shares of stock subscribed for by Grace A. Patterson," and said respondent averred it had been impossible to obtain such substituted subscriber, and that, therefore, the contingency upon which it would be the legal duty of the United States Bond and Mortgage Company to make such refund had not occurred.

The evidence shows that the respondent company cancelled the subscriptions for stock of Miss Patterson on February 24, 1930, and that on said day and date the company wrote Miss Patterson a letter of which the following is a copy:

"United States Bond & Mortgage Co.
"2010 Fourth Avenue North
"Birmingham, Ala.
                    "February 24, 1930
"Miss Grace A. Patterson,
  "816 Lexington Avenue,
  "New York City.
"Dear Miss Patterson:
  "This is to advise you that the United States Bond and Mortgage Company has pursuant to the provision in your contract of purchase, elected to cancel your reservation for One Hundred Ten (110) shares of Common Stock, and One Hundred Ten (110) shares of Preferred Stock,

and will proceed with all reasonable diligence to sell the same. This action is taken under the following paragraph contained in your contract of purchase Dated September 7th, and 23rd, 1927:

"'The applicant agrees that upon failure to carry out the terms of payment for sixty days (60) time being the essence of this contract, the company may cancel this reservation and offer for resale the shares represented herein. And after deducting the cost of this sale and such resale, refund the applicant any amount paid in by him less such expense.'

"The provisions of the foregoing paragraph will be strictly observed by United States Bond and Mortgage Company when resale is made.

"Yours very truly,

"United States Bond & Mortgage Company
"(Signed) Carlton P. Smith
"Carlton P. Smith,
"CPS:HMH        Secretary Treasurer."

It also appears from the evidence that twelve days before the letter of cancellation was written and mailed, the said United States Bond and Mortgage Company wrote and mailed to Miss Patterson the following letter:

"United States Bond & Mortgage Co.
"2010 Fourth Avenue North
"Birmingham, Ala.
"February 12th, 1930

"Dear Stockholder:

"The enclosed financial statement should prove most gratifying to you, as it convincingly indicates the splendid condition of your company as of January 31, 1930.

"Experienced investors agree that your company is one of the soundest investment institutions in Alabama. Our mortgages are sound and in splendid shape; we are unburdened with bank loans or other obligations; we are never subject to excessive withdrawals or 'runs'. Stock subscriptions have shown a marked increase so far this month. We know all this is good news to you as active stockholder of the company.

"Your company has established a precedent in the fact that the By-Laws and Charter, filed with the Securities Commission of Alabama, prohibit loans, directly or indirectly, to any officer, director or employee of the company. This rule has always been rigidly enforced and your Secretary Treasurer believes that it must finally be adopted by all successful financial institutions, as it puts mortgage loans on strictly a business basis.

"Please accept this letter as a personal invitation to drop in our office and see for yourself the systematic handling of your company's affairs.

"Yours very truly,
"United States Bond & Mortgage Company
"Carlton P. Smith,
"CPS:HMH        Secretary Treasurer."

It is here to be noted that both of these communications were written for the company by Carlton P. Smith, as its secretary-treasurer. This same Mr. Smith was called and testified on the trial for the respondents that after the cancellation of said stock, the company made no effort to sell the same; that it would have been impossible to sell it and that the contracts, upon their cancellation, were put into what he termed the "inactive accounts" and there they have remained.

However, the evidence convinces us that on February 12, 1930, the United States Bond and Mortgage Company was a "going concern," in splendid financial condition, fully solvent, and actually paying dividends from its earnings to the stockholders; that it was not burdened with bank loans or other obligations; and that stock subscriptions were then showing "a marked increase." There is nothing in the evidence which satisfies us that any change in the financial condition of the company, or in the operation of its business, occurred in the intervening time between February 12, 1940, and February 24, same year.

It was the plain duty of the said United States Bond and Mortgage Company under the terms of its contracts with Miss Patterson, upon the cancellation of her subscription contracts, to proceed with reasonable diligence to resell the stock subscribed for by Miss Patterson. And we are reasonably satisfied from the evidence that the company, after it had elected to cancel said subscription contracts, could have resold said stock for its face value by the exercise of reasonable diligence in that regard, and to that end. This diligence the company failed to exercise, on the contrary it made no effort to discharge the duty to resell said stock, which, by their plainest terms, the contracts enjoined upon it. The company thus breached its undertakings, and for these breaches, it became liable in damages to Miss Patterson, and to her assignee.

The measure of her damages was the amount paid in by her, less the cost of the original sales.

We find that Miss Patterson had paid on her three subscription contracts, at the time the company cancelled the same, the aggregate sum of $2,090, and deducting therefrom the sum of $229.90, the original cost to the company of obtaining said subscription contracts, leaves a net balance of the payments made on said contracts of $1,860.-10, and to which amount must be added $238 for interest credited to Miss Patterson by said company on said contracts. This then makes the amount that was due Miss Patterson by the Company $2,098.10, by reason of the breach of its said contracts.

The complainant, as assignee of Miss Patterson, is entitled to recover in this suit of the United States Bond and Mortgage Company the said sum of $2,098.10, with interest thereon from April 1, 1930.

It is, therefore, our conclusion and judgment that the decree of the circuit court is erroneous, and must be, and is, reversed and a decree here rendered for the complainant for the sum of $3,445.12, which includes interest from April 1, 1930, at six (6%) per cent, and declaring and holding the complainant to be a general, or unsecured creditor of said company for said amount, and entitled to participate, as such, in the distribution of the assets of said corporation to be made by the receivers under the orders of the circuit court. The cost of this appeal will be taxed against appellees, to be paid out of the assets of said corporation.

Reversed and rendered.

GARDNER, C. J., and THOMAS and BROWN, JJ., concur.