HARRY ANZAI, ET AL. *v.* YOSHIO KAWAI, ET AL.

No. 4651.

June 4, 1968.

RICHARDSON, C.J., MIZUHA, MARUMOTO,
ABE AND LEVINSON, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

The question for decision on this appeal is the scope of exemption provided in R.L.H. 1955, 1965 Supp., § 199-5 (j), from the other provisions of R.L.H. 1955, 1965 Supp., c. 199, which regulates sales of securities in Hawaii.

R.L.H. 1955, 1965 Supp., c. 199, which will hereafter be referred to as the amended securities act, is a compilation of the provisions of Act 314 of the Session Laws of 1957, which replaced the securities act originally enacted by the 1931 Legislature. References in this opinion to statutory sections are to sections of the amended act and not to sections of the original act unless specifically noted otherwise.

Plaintiffs are purchasers of securities, consisting of shares of common stock and debentures, of Aloha Leasing and Factoring,

Inc., a Hawaii corporation. These securities have not been registered with the State securities commissioner. Under § 199-6, it is unlawful to sell unregistered securities, except those which are classified as exempt securities in § 199-4 and those which are sold in exempt transactions defined in § 199-5.

Defendants are the corporate issuer of the securities which were purchased by plaintiffs, and the president and secretary-treasurer of the issuer who participated in making the sales of those securities.

Plaintiffs sued defendants to recover the amounts they paid for the securities, under § 199-16, which declares that every sale of securities in violation of the securities act is voidable at purchaser's option, and makes every seller, and every director, officer or agent of the seller who participated in selling the securities, liable to the purchaser for the full amount paid for the securities, together with interest and costs, including reasonable attorney's fees.

Defendants interposed the defense that the securities were sold in transactions within the purview of § 199-5 (j), which exempts from the coverage of the securities act "Any offer or sale of a preorganization certificate or subscription if no commission or other remuneration is paid or given directly or indirectly for soliciting any prospective subscriber, and the number of subscribers does not exceed twenty-five."

The material facts in this case are not in dispute. Aloha was organized on March 6, 1964, with an authorized capital of $50,000, divided into 100,000 shares of the par value of 50 cents per share, of which 77,500 shares of the aggregate par value of $38,750 were subscribed by 16 persons before incorporation.

Plaintiffs were among the preincorporation subscribers. Each of them signed a document entitled "ALOHA LEASING AND FACTORING, INC. SUBSCRIPTION AGREEMENT."

Omitting portions not material to this case, the document signed by Harry Anzai read as follows:

"I hereby subscribe for 3,000 shares of common, voting, non-assessable stock of an aggregate value of $1,500 and for 15 debentures of an aggregate value of $1,500 of a corporation to

be organized pursuant to the laws of the State of Hawaii under the name of ALOHA LEASING AND FACTORING, INC. Attached hereto is my check in the amount of $750.00 payable to Aloha Leasing and Factoring, Inc.

"I agree to take the number of shares of such stock and of such debentures specified above and to pay the balance of $2,250.00 upon incorporation or at such times as shall be determined by the Board of Directors of the corporation. The subscription hereby made shall be deemed to be accepted by the corporation immediately upon the filing of the Articles of Incorporation as provided by law."

The documents signed by the other plaintiffs were identical in language, except for figures handwritten in blank spaces in the typewritten forms.

Plaintiffs made all of their payments before the incorporation of Aloha. The payments totaled $37,000. Aloha issued stock certificates to plaintiffs on March 7, 1964, one day after incorporation. These certificates were for 37,000 shares aggregating $18,500 in par value. It issued debentures of the total face value of $18,500 five months later, on August 15, 1964. The debentures are payable on March 6, 1969, with interest at the rate of 8 per cent per year. Interest is payable yearly.

No commission or other remuneration was paid to any person for soliciting plaintiffs' signatures to the documents.

The trial court rejected defendants' contention, and granted the relief sought by plaintiffs by equating § 199-5 (j) with § 402(b)(10) of the Uniform Securities Act.

We think that the court arrived at a right decision, but for a wrong reason.

Under § 402 (b) (10), an offer or sale of a preorganization certificate or subscription is exempted "if (A) no commission or other remuneration is paid or given directly or indirectly for soliciting any prospective subscriber, (B) the number of subscribers does not exceed ten, and (C) no payment is made by any subscriber."

The commissioners' note appended to this provision states:

"§ 402(b)(10) itself simply postpones registration; it does not excuse registration altogether."

Thus, the exemption contemplated by this provision is a very limited one. It extends only to the act of obtaining the signatures of not more than 10 subscribers to preorganization subscriptions for capital stock of a proposed corporation. It does not extend to the issuance of stock certificates pursuant to the subscription.

This is so because, under the scheme of the uniform act, § 402(b)(10) is a mere technical exemption to enable a proposed corporation to obtain the minimum number of subscribers for capital stock required by state law before its incorporation. Loss and Cowett, *Blue Sky Law*, p. 375 (1958).

In Hawaii, such technical exemption is unnecessary and meaningless, for here the corporation law requires no more than one preincorporation subscriber for capital stock. If § 199-5 (j) is to be meaningful with reference to the corporation laws of Hawaii, it must be construed as providing an exemption for stock issued pursuant to a preorganization subscription agreement exempt under that section.

In connection with the enactment of the amended securities act, the Senate Judiciary Committee of the 1957 Legislature stated in Standing Committee Report No. 231: "The Bill adopts the definitions of 'exempt transactions' as set forth in the Uniform Act. These definitions are similar in substance to those of the present Hawaii Uniform Sale of Securities Act."

But the fact is that with reference to § 199-5 (j), the Legislature did not adopt the definition of the uniform act. It made two changes. In § 199-5 (j), the limitation on the number of subscribers is 25 instead of 10; also, § 199-5 (j) omits condition (C) of § 402(b)(10) that there be no payment by any subscriber.

While the legislative record is silent as to the reason for the changes, we think that they were made because § 402 (b) (10), in its original form, was unlike the corresponding provision in the existing securities act, and the Legislature wanted the new provision to be similar in substance to the existing provision.

The provision of the existing securities act, which was replaced by § 199-5 (j), was R.L.H. 1955, § 199-5 (i), which read as follows:

"(i) Certain subscriptions. Subscriptions for shares of the capital stock of a corporation prior to the incorporation thereof *where the aggregate number of such subscriptions does not exceed fifty and* where no expense is incurred, or no commission, compensation or remuneration is paid or given for or in connection with the sale or disposition of such securities." (Italics supplied)

This provision was derived from section 5 (i) of Act 252 of the Session Laws of 1931, which adopted the Uniform Sale of Securities Act substantially in the form approved by the National Conference of Commissioners of Uniform State Laws. The provision, as originally enacted in 1931, did not contain the italicized words in the above quotation. The Legislature amended it twice before replacing it with § 199-5 (j), first by Act 210 of the Session Laws of 1949, which limited the number of permissible subscriptions to 25, and next by Act 253 of the Session Laws of 1953, which increased the number of subscriptions to 50. The limitation of the number of subscribers to 25 in § 199-5 (j) is a reduction of the limitation in the pre-existing securities act back to what it was before the 1953 amendment, rather than an increase of the suggested limitation in § 402(b)(10).

In *Durham Citizens' Hotel Corporation* v. *Dennis*, 195 N.C. 420, 142 S.E. 578 (1928), and *Gill Printing Co.* v. *Goodman*, 224 Ala. 97, 139 So. 250 (1932), issuance of stock certificates pursuant to preincorporation subscriptions was held not to come within the purview of the regulatory provisions of the state securities laws. Both North Carolina[1] and Alabama[2] had provisions similar to section 5 (i) of Act 252 of the Session Laws of 1931.

---

[1] The North Carolina statute, Public Laws 1927, c. 149, § 4 (9), read: "Subscriptions for shares of the capital stock of a corporation prior to the incorporation thereof, when no expense is incurred, and no commission, compensation or remuneration is paid or given for, or in connection with, the sale or disposition of such securities."

[2] The Alabama statute, 1923 Code, § 9880, amended by Acts 1927, pp. 555-561, § 2 (6), read: "Capital stock of a corporation in the process of organization under the laws of this state, or subscriptions for or contracts to deliver such capital stock, executed prior to the incorporation thereof, when no expense is incurred, directly or indirectly and no commissions, compensation or remuneration is paid or given for or in connection with the sale or disposition of such stock, and where no part of the stock of such corporation or any proceeds thereof have been or are to be issued and paid for in any

According to the testimony of the Corporations and Securities Registrar of the State Department of Regulatory Agencies, that department had treated the issuance of stock certificates pursuant to preincorporation subscriptions obtained within the limitations of R.L.H. 1955, § 199-5 (i), as being exempt from the registration requirement of the pre-existing securities act and has continued to so treat the issuance of stock certificates pursuant to preincorporation subscriptions obtained within the limitations of R.L.H. 1955, 1965 Supp., § 199 (5) (j) , as being exempt from the registration requirement of the amended securities act.

We think that the language of § 199-5 (j) is unambiguous, except possibly with regard to the meaning of the words "preorganization certificate or subscription." We see nothing therein which warrants the construction that the exemption is limited to sales of preincorporation subscriptions for capital stock and does not extend to issuance of stock certificates pursuant to such subscriptions.

With reference to the words "preorganization certificate or subscription," we hold that they mean preincorporation subscription for capital stock. The language in the original act was clear. There the exemption was limited to "Subscriptions for shares of the capital stock of a corporation prior to the incorporation thereof." We do not think that the 1957 Legislature, in substituting the words "preorganization certificate or subscription" for the pre-existing language, intended to include other types of securities, such as debentures, for its object in amending the pre-existing securities act, as stated by the Judiciary Committee in Standing Committee Report No. 231, was "to provide for more adequate regulation and control of the sale of securities in the Territory."

It will be noted that the documents signed by plaintiffs were subscriptions not only for shares of capital stock of a proposed corporation but also for debentures to be issued by the proposed corporation. Under our holding, as stated in the preceding paragraph, preincorporation subscriptions for unregistered de-

---

way except in money, or money and solvent notes, or in property at the reasonable value of such property."

bentures do not come within the purview of the exemption provided in § 199-5(j); and, consequently, sales of such securities violate the amended securities act.

In this case, the documents in evidence show that subscriptions for capital stock and subscriptions for debentures constituted a single package. They were not offered separately. In such situation, we are not at liberty to segregate what the seller did not segregate, and the illegality of subscriptions for debentures infects the subscriptions for capital stock with similar illegality.

Affirmed.

*R. G. Dodge (Heen, Kai & Dodge* of counsel) for appellants.

*William F. Crockett (Crockett & Langa* of counsel) for appellees.

*Smith, Wild, Beebe & Cades (J. Russell Cades* & *C. Frederick Schutte* on the briefs) amicus curiae.